On petition to review ballot title filed March 10, considered and under advisement April 12, ballot title referred to Attorney General for modification May 5, ballot title certified May 23, 2011 (350 Or 409)

Gail RASMUSSEN
and Bethanne Darby,
*Petitioners,*

*v.*

John R. KROGER,
Attorney General,
State of Oregon,
*Respondent.*

(S059261)

253 P3d 1031

Aruna A. Masih, Bennett, Hartman, Morris & Kaplan, LLP, Portland, filed the petition and reply memoranda for petitioners.

Judy C. Lucas, Senior Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the answering memorandum were John R. Kroger, Attorney General, and Mary H . Williams, Solicitor General.

LANDAU, J.

## LANDAU, J.

Petitioners seek review of the Attorney General's certified ballot title for Initiative Petition 10 (2012), arguing that the ballot title does not satisfy the requirements of ORS 250.035(2). *See* ORS 250.085(2) (specifying requirements for seeking review of certified ballot titles). This court reviews a certified ballot title to determine whether it substantially complies with those statutory requirements. *See* ORS 250.085(5) (stating standard of review). For the reasons that follow, we refer the ballot title to the Attorney General for modification.

Initiative Petition 10, a copy of which is attached as an Appendix to this opinion, would amend Article IV, section 6, of the Oregon Constitution, which sets out the method of reapportioning—also known as "redistricting"—state legislative districts following the completion of the decennial United States census. Under current law, the Legislative Assembly is assigned the responsibility of reapportionment, at the first regular legislative session following the completion of the national census. Or Const, Art IV, § 6(1). If the Legislative Assembly fails to enact a reapportionment of legislative districts by a specified deadline, the responsibility for the reapportionment falls to the Secretary of State. *Id.* § 6(3)(a). Any elector of the state is authorized to petition the Oregon Supreme Court to review a reapportionment created by the legislature or the Secretary of State. *Id.* §§ 6(2)(a), 6(3)(b).

Initiative Petition 10 would change the reapportionment process by removing responsibility for the task from the Legislative Assembly and the Secretary of State and placing it instead with a commission of retired circuit court judges, one from each of the then-current congressional districts, appointed by the Chief Justice of the Oregon Supreme Court. The commission would create a reapportionment plan every 10 years, during the year following the United States census, based on those census results. If the commission were to fail to create a redistricting plan by September 1 of the relevant year, the Oregon Supreme Court would create a final, nonreviewable plan.

Initiative Petition 10 also would alter the criteria that must be applied in determining the boundaries of the new legislative districts. The commission or the Supreme Court would be required to "use only the following criterion when apportioning the state into legislative districts: each district shall be geographically maximally compact."[1]

Initiative Petition 10 also provides that a "Fresh Start Apportionment shall be conducted in the year 2013, regardless of any apportionment plan adopted in 2011" under existing reapportionment law. Thus, in 2013, the commission of retired judges would be required to adopt a new reapportionment plan, based on the results of the 2010 census, which would repeal and replace any existing plan based on that same census.

The Attorney General certified the following ballot title for Initiative Petition 10:

**"Amends Constitution: Repeals legislative redistricting by Legislative Assembly; starting 2013, appointed commission of retired judges conducts redistricting**

**"Result of 'Yes' Vote:** 'Yes' vote replaces legislative redistricting by legislature or Secretary of State with redistricting by appointed commission of retired judges or Supreme Court, beginning in 2013.

**"Result of 'No' Vote:** 'No' vote retains process of legislative redistricting by Legislative Assembly after each census; if legislature fails to complete redistricting plan, Secretary of State conducts redistricting.

**"Summary:** Amends Constitution. Currently, Legislative Assembly reapportions state's legislative districts based on population every ten years, after federal census, using statutory criteria. If legislature fails to complete redistricting, Secretary of State redraws districts after public hearing, testimony, evidence. Redistricting plan may be challenged in Oregon Supreme Court. Measure replaces current process with redistricting by commission of retired circuit court

---

[1] No party raises the issue whether the alteration of the criteria for determining legislative districts is a major effect that must be expressed in the ballot title, and we do not address the matter.

judges, appointed by Chief Justice. Commission takes public comment, holds hearing throughout state. Each district must be geographically 'maximally compact' (defined). Legislature may not restrict or direct commission; substantially hinder commission in performing its work independently; or repeal, amend or refer plan to voters. If commission defaults, Supreme Court provides final, unreviewable plan by year's end. Commission redistricts in 2013, overturning any 2011 redistricting plan. Other provisions."

(Boldface in original.)

Petitioners contend that the ballot title is deficient in a number of different respects pertaining to the caption, the "yes" vote result statement, and the summary. We begin with petitioners' contentions concerning the caption.

ORS 250.035(2)(a) provides that a ballot title caption for a proposed constitutional amendment must begin with the words "Amends Constitution," followed by a statement of not more than 15 words that "reasonably identifies the subject matter" of the measure. To comply with that statutory standard, case law requires that the caption "state or describe the proposed measure's subject matter 'accurately, and in terms that will not confuse or mislead potential petition signers and voters.' " *Kain / Waller v. Myers*, 337 Or 36, 40, 93 P3d 62 (2004) (quoting *Greene v. Kulongoski*, 322 Or 169, 174-75, 903 P2d 366 (1995)). For purposes of this court's review, the "subject matter" of a ballot title is "the 'actual major effect' of a measure or, if the measure has more than one major effect, all such effects (to the limit of the available words)." *Whitsett v. Kroger*, 348 Or 243, 247, 230 P3d 545 (2010). To identify the "actual major effect" of a measure, this court examines the text of the proposed measure to determine the changes that the proposed measure would enact in the context of existing law and then examines the caption to determine whether the caption reasonably identifies those effects. *Kain / Waller*, 337 Or at 41.

In this case, petitioners contend that the caption in the Attorney General's certified ballot title does not substantially comply with the foregoing requirements in that it understates the scope of the changes that adoption of the measure would require and, thus, is misleading. Specifically,

petitioners complain that the caption does not notify voters that a major effect of adopting Initiative Petition 10 would be to repeal and replace any reapportionment plan that the Legislative Assembly or the Secretary of State adopts in 2011. The Attorney General responds that the "Fresh Start Apportionment" that would occur in 2013 is simply not a "major effect" of Initiative Petition 10.

We agree with petitioners that the caption fails to identify the major effects of adopting Initiative Petition 10. As we have noted, the adoption of the measure would not merely replace the existing reapportionment process, but also would require that the new process be applied in 2013 to replace the existing reapportionment. That is not a minor, incidental effect. It is, in fact, the only effect that adoption of the measure would accomplish before the year 2021.

There are thus at least two major effects of adopting Initiative Petition 10, and the caption in the Attorney General's certified ballot title identifies only one of them. It is true that the caption uses the phrase "starting 2013" in describing the effect of the measure. The phrase is at best ambiguous, however. It could mean that Initiative Petition 10 is effective in 2013, but only prospectively, that is, without affecting any reapportionment approved in 2011. Or, it could mean that its adoption would require the repeal and replacement of any existing reapportionment. Without more, the caption in the Attorney General's certified ballot title does not substantially comply with the statutory requirement that it reasonably identify the subject matter of the measure within the 15-word limit. We believe it is possible to do so and, therefore, refer the caption to the Attorney General for revision.

We turn to petitioners' contention that the "yes" vote result statement is legally insufficient. ORS 250.035(2)(b) provides that a result statement must be a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved." This court stated in *Novick / Crew v. Myers*, 337 Or 568, 574, 100 P3d 1064 (2004), that "the result of a proposed measure's enactment that belongs in the 'yes' vote result statement is

that outcome that is the most significant and immediate, or that carries the greatest consequence, for the general public."

In this case, petitioners contend that the "yes" vote result statement in the Attorney General's certified ballot title suffers from the same deficiency as the caption in that it fails to inform the voters that a significant result of adopting the measure is the repeal and replacement of the existing reapportionment. The Attorney General argues that the inclusion of the phrase, "beginning in 2013," adequately informs the voters of the effect of adopting the measure.

As we previously noted, the "Fresh Start Apportionment" is the most immediate effect of Initiative Petition 10; it is, in fact, the only significant effect until 2021. The "yes" vote result statement does not inform the voters of that effect. The phrase "beginning in 2013" is no less ambiguous than the phrase "starting 2013" that is used in the caption. Therefore, we also refer the "yes" vote result statement to the Attorney General to modify that statement in a way that clarifies the effect of the "Fresh Start Apportionment" provision of Initiative Petition 10.

Petitioners contend that the Attorney General's certified ballot title is deficient in several other ways. We reject those contentions without discussion.

The ballot title is referred to the Attorney General for modification.

## APPENDIX

"In order to establish an independent, non-partisan commission to carry out reapportionment of legislative districts and to avoid partisan, self-interested action by legislators in drawing legislative district lines, the Constitution of the State of Oregon is amended by repealing section 6, Article IV, and by adopting the following new section 6 in lieu thereof:

"SECTION 6. (1) In each year ending in the number one, Senators and Representatives shall be apportioned among legislative districts according to population and a redistricting plan adopted in the manner provided in this Section. A senatorial district shall consist of two representative districts. Any senator whose term continues through the next regular legislative session after the operative date of the redistricting plan shall be specifically assigned to a senatorial district. The ratio of senators and representatives, respectively, to population shall be determined by dividing the total population of the state by the number of senators and by the number of representatives.

"(2) Not later than January 31 of each year ending in the number one, a Redistricting Commission shall be established to provide for the redistricting of state legislative districts.

"(3)(a) The Commission shall be composed of one Senior Circuit Court Judge from each of the then-existing congressional districts.

"(b) Each Commission member shall be chosen by the Chief Justice of the Oregon Supreme Court, subject to the approval of the majority of the members of the Supreme Court, from among the Senior Circuit Court Judges who reside in each congressional district. The appointments shall be subject to the following limitations:

"(A) No more than one Commission member may reside in any one county.

"(B) No Commission member may have served:

"(i) In a partisan government elective office, or have served in a political party elective office as an officer (other than precinct committee person), during the 20 years previous to the person's appointment to the Commission; or

"(ii)    On a previous Commission.

"(c)    Any vacancy on the Commission shall be filled by the Chief Justice, subject to the approval of a majority of the members of the Supreme Court, from the congressional district in which the vacating Commissioner resided.

"(d)    As used in this section, 'Senior Circuit Court Judge' means a person who has retired from the full-time office of Circuit Court Judge, but has continued in part-time judicial service, under the direction of the Oregon Supreme Court, within a retirement plan for judges.

"(4)(a)    The Commission is a part of the Judicial Department of state government for budgeting and administrative purposes.

"(b)    Notwithstanding paragraph (a) of this subsection, the Commission shall comply with all laws on the disclosure of records and the openness of meetings that apply to the Executive Department of state government.

"(c)    The Commission shall elect a chair from among its own members. The chair shall preside over the proceedings of the Commission and shall, subject to the approval of the Commission, select an executive director to assist the Commission in the execution of its duties. All additional staff support and services for the Commission shall be provided for by the Office of the Secretary of State, provided that such staff support and services shall be under the direction of the Commission, its chair, and its executive director.

"(5)    An affirmative vote of a majority of Commission members is necessary for the adoption of any Preliminary or Final Redistricting Plan. In all other respects, the Commission may establish its own rules and procedures as necessary to accomplish its work. The Commission shall not be subject to statutory restrictions or directives affecting its decisions.

"(6)(a)    The Commission or the Supreme Court, whichever is applicable, shall use only the following criterion when apportioning the state into legislative districts: each district shall be geographically maximally compact. 'Maximally compact' means the sum of the perimeters of all districts is the smallest number possible using undivided census blocks to create each district, as nearly as practicable. If in the future the United States Census Bureau develops

smaller geographic units than census blocks, then those units will be substituted for census blocks.

"(b)   No district shall be drawn for the purpose of favoring any political party, incumbent legislator or other person.

"(c)   No district shall be drawn for the purpose of affecting the voting strength of any language or ethnic minority group.

"(d)   Two representative districts shall be wholly included within a single senatorial district. The senatorial districts will be drawn by combining pairs of adjoining representative districts so that the senatorial districts are maximally compact.

"(7)   The Commission shall adopt a Preliminary Redistricting Plan as soon as practicable following the enumeration of the inhabitants of this state by the United States government, but not later than June 1. Upon adoption of the Preliminary Redistricting Plan, the Commission shall receive public comment and shall conduct at least one public hearing in each congressional district to receive public testimony regarding the Preliminary Redistricting Plan.

"(8)   After conducting public hearings, the Commission shall adopt a Final Redistricting Plan no later than September 1.

"(9)   Original jurisdiction is vested in the Oregon Supreme Court, upon the petition of any 15 electors of the state filed with the Supreme Court on or before October 1 of the year in which the Final Redistricting Plan is adopted, to review the Final Redistricting Plan.

"(10) If, upon challenge properly filed with the Supreme Court, the Court determines that the Final Redistricting Plan conforms to the requirements of the United States Constitution and the Oregon Constitution, it shall dismiss the challenge and approve the plan. No error or errors by the Commission shall be grounds for modification of the Final Redistricting Plan unless the error or errors constitute a violation of this Constitution or of the United States Constitution. If any such violation is found, the Supreme Court may itself correct the Final Redistricting Plan, or take such other action as it deems necessary to remedy the violation. The Supreme Court shall render its final decision as to any challenge no later than December 31

of the same year the Final Redistricting Plan was adopted by the Commission.

"(11) If the Commission does not adopt a Final Redistricting Plan by September 1, then the Commission shall be disbanded and the Supreme Court shall prepare the Final Redistricting Plan by December 31 of the same year the plan was due from the Commission. The Supreme Court may appoint one or more Senior Circuit Court Judges as special masters to assist with the Final Redistricting Plan. The Supreme Court shall conduct a hearing on the reapportionment at which the public may submit evidence, views and argument.

"(12) A Final Redistricting Plan that is approved or prepared by the Supreme Court or for which no challenge is timely filed is not subject to revision by any Act of the Legislative Assembly.

"(13) The reapportionment shall be operative on December 31 of the same year the plan was due from the Commission. Upon completion of this reapportionment process, the Commission shall be disbanded.

"(14)(a) Any reapportionment that becomes operative as provided in this section is a law of the state, but is not subject to amendment or repeal by the Legislative Assembly or to the referendum power reserved to the people. The people may amend or repeal a plan through the initiative.

"(b) The Legislative Assembly shall arrange for publication of the approved Final Redistricting Plan with the session laws of the Legislative Assembly that meets in the same year as the commission.

"(15) Notwithstanding section 18, Article II of this Constitution, after the convening of the next regular legislative session following the reapportionment, a Senator whose term continues through that legislative session is subject to recall by the electors of the district to which the Senator is assigned and not by the electors of the district existing before the latest reapportionment. The number of signatures required on the recall petition is 15 percent of the total votes cast for all candidates for Governor at the most recent election at which a candidate for Governor was elected to a full term in the two representative districts

comprising the senatorial district to which the Senator was assigned.

"(16) Members of the legislative assembly have an inherent conflict of interest relating to the redistricting process. Accordingly, the legislative assembly shall not enact any legislation which substantially hinders the Redistricting Commission in the independent performance of its work. The legislative assembly shall not require any additional redistricting standard which has the effect of gerrymandering districts.

"(17) A Fresh Start Apportionment shall be conducted in the year 2013, regardless of any apportionment plan adopted in 2011 under the process which preexisted the adoption of this amendment. The Fresh Start Apportionment shall be based on the 2010 census and shall be conducted as if this amendment became effective in December 2010 but with the deadlines adjusted for a process beginning in January 2013, instead of January 2011. This provision shall be given a common-sense interpretation and is intended to give Oregonians a Fresh Start on nonpartisan apportionment as soon as practicably possible. Once the Fresh Start Apportionment is complete, future apportionments shall be conducted on the original base cycle (each year ending with the number one)."