FLYNN, J.
**653 Two sets of petitioners have challenged the Attorney General's certified ballot title for Initiative Petition 33 (2018) (IP 33). If adopted, IP 33 would require that "government employee unions"[1] annually report the following information to the Secretary of State:
"[H]ow dues are spent and recipients of such dues, including:
"(a) total amount of all dues collected by the government employee union;
"(b) contributions made by the government employee union to political committees, petition committees, and independent expenditures;
"(c) expenses paid by the government employee union that the government employee union determined were for collective bargaining and chargeable to nonmembers, and a description of the method used to make such determinations;
"(d) expenses paid by the government employee union that the government employee union determined were not for collective bargaining and not chargeable to nonmembers, and a description of the method used to make such determinations;
"(e) money spent by the government employee union for lobbying;
"(f) salaries for the government employee union's officers and ten highest paid employees who are not officers; and
"(g) donations and contributions made by the government employee union to organizations exempt from taxes under federal Internal Revenue Code, § 501(c)."
IP 33, § 2(1)(a)-(g). IP 33 also requires that a government employee union forward its report "to all of its members and nonmembers within seven days of filing with the Secretary of State." IP 33, § (2)(2).
Once the reports described above have been filed with the Secretary of State, IP 33 provides that the secretary **654 is responsible for making the information contained in the reports "available to the public on an ongoing basis in the form of a searchable database accessible through the Internet." IP 33, § 3(2). In addition, the reports "shall be subject to audit by the Secretary of State," and the secretary "may impose penalties of up to 0.25% of the government employee union's gross receipts in Oregon for any failure to comply" with the reporting requirements. IP 33, § 3(3), (4).
The requirements for a ballot title are set out in ORS 250.035. This court reviews the certified ballot title for substantial compliance with those statutory requirements. ORS 250.085(5). For IP 33, the Attorney General certified the following ballot title:
" 'Government employee unions' (defined) must disclose dues/representation fees collected, certain expenditures; information posted online *978 "Result of 'Yes' Vote: 'Yes' vote requires 'government employee unions' (defined) to disclose to Secretary of State dues/representation fees collected, certain expenditures; information posted online; authorizes penalties/audits.
"Result of 'No' Vote: 'No' vote maintains current Oregon law; unions must report political contributions, lobbying expenses, and payroll tax information; need not disclose other expenditures, dues/representation fees.
"Summary: Under federal law, unions file tax returns, which are publicly available. Some unions report financial information to U.S. Department of Labor; unions representing only public employees do not report. Oregon and federal law require reporting political contributions. Oregon law requires reporting lobbying expenses, payroll taxes. Measure requires 'government employee union's (defined) to file an annual statement with Secretary of State reporting:
"• total dues/representation fees collected;
"• political contributions;
"• expenses for 'collective bargaining' (defined) chargeable to nonmembers;
**655 "• expenses not for collective bargaining and not chargeable;
"• expenses for 'lobbying' (defined);
"• salaries for certain employees;
"• donations to non-profits."
Chief petitioners Schworak and Mitchell challenge the summary, while petitioners Lutz and Schwartz challenge all parts of the certified ballot title. After reviewing the petitioners' arguments, we conclude that the proposed caption, the "no" result statement, and the summary do not substantially comply and must be modified. The "yes" result statement does substantially comply and does not require modification. We begin with petitioners' challenges to the caption.
CAPTION
The caption for a ballot measure must contain "not more than 15 words" and must "reasonably identif[y] the subject matter of the state measure" by describing the measure's "actual major effect." ORS 250.035(2)(a) ; see Lavey v. Kroger , 350 Or. 559, 563, 258 P.3d 1194 (2011) (describing statute). If there is more than one major effect, then the caption should describe as many major effects as possible within the word limit. Lavey , 350 Or. at 563, 258 P.3d 1194. To determine a major effect of a measure, we consider the "changes that the proposed measure would enact in the context of existing law." Rasmussen v. Kroger , 350 Or. 281, 285, 253 P.3d 1031 (2011).
Petitioners Lutz and Schwartz contend that the certified caption fails to capture an "actual major effect"-the creation of a "new oversight scheme" for the Secretary of State to audit reports and to make the information from those reports available in a searchable online database. They contend that the new responsibilities for the secretary are a more significant effect of IP 33 than the disclosures themselves, because unions are already required to disclose most of the same information through a patchwork of state and federal requirements. Indeed, given those existing disclosure requirements, petitioners suggest that the disclosure requirement of IP 33 is not a major effect.
**656 Although the Attorney General agrees that unions already are required to disclose "much of the information disclosed to the Secretary of State" under IP 33, she contends that the disclosure requirement, with subsequent public posting of the information, is a major effect because Oregon law does not currently "contain any public disclosure requirements that focus specifically on unions." In contrast, the Attorney General contends, the enforcement powers conferred on the secretary are not a major effect of IP 33 because the secretary exercises similar powers in other areas, such as over election requirements. Finally, the Attorney General asserts, without explanation, that the creation and maintenance of a searchable internet database is not a major effect of the measure.
*979 We agree with the Attorney General that the new, comprehensive disclosure requirement is a major effect that is properly included in the caption. We also agree with Petitioners Lutz and Schwartz, however, that the new obligations that IP 33 creates for the secretary are an additional major effect. We recently held that a similar requirement was a major effect of a different measure that would make the Secretary of State responsible for creating and administering a website to collect initiative and referendum signatures. Unger v. Rosenblum , 361 Or. 814, 817, 401 P.3d 789 (2017). The deficient caption in Unger explained that the Secretary of State would "enable and accept" the signatures but did not mention the secretary's responsibility to administer the website. Id . at 817-18, 401 P.3d 789. In that case, the Attorney General acknowledged "that creating and administering a website is a major effect," and we agreed with that assessment, noting that creating "a state-administered website that is user-friendly, reliable, and secure and that works on any type of personal computer is neither simple nor inexpensive." Id. at 817, 401 P.3d 789.
Although the searchable internet database that IP 33 requires the secretary to create and maintain is not identical to the website that would be required by the measure at issue in Unger , creating and maintaining the internet database is a significant new obligation in the context of existing law. Moreover, IP 33 also adds a whole new area of **657 oversight responsibility to the secretary's current authority. Those additional obligations are a major effect of IP 33 in the context of existing law, and the caption must be revised to describe those effects.
"YES" RESULT STATEMENT
Petitioners Lutz and Schwartz contend that the "yes" result statement also should be rewritten to more fully describe the "new oversight scheme within the Secretary of State's office." This court has observed that the "yes" result statement should describe "the most significant and immediate" effects of the ballot initiative for "the general public." Novick/Crew v. Myers , 337 Or. 568, 574, 100 P.3d 1064 (2004). We conclude that the current "yes" result statement substantially complies with that requirement by mentioning the role of the Secretary of State: "information posted online; authorizes penalties/audits."
"NO" RESULT STATEMENT
A "no" result statement should be a "simple and understandable statement of not more than 25 words that describes the result if the state measure is rejected." ORS 250.035(2)(c). In other words, the "no" result statement should describe the "status quo." Vaandering v. Rosenblum , 359 Or. 1, 10, 371 P.3d 1194 (2016).
The certified "no" result statement for IP 33 reads:
"Result of 'No' Vote: 'No' vote maintains current Oregon law; unions must report political contributions, lobbying expenses, and payroll tax information; need not disclose other expenditures, dues/representation fees."
Petitioners Lutz and Schwartz argue that the "no" statement is "incomplete, misleading and inaccurate" because it omits mention of applicable disclosures that federal law currently requires and because it inaccurately describes the pertinent disclosures that state law currently requires. Petitioners contend that the "no" statement will lead voters to mistakenly believe that unions are currently required to disclose only "political contributions, lobbying expenses, and payroll tax information," and that unions are currently not required to disclose "other expenditures, dues/
**658 representation fees." Even looking just to state law, petitioners argue, the disclosures that the "no" result statement describes are not accurate. In particular, petitioners emphasize that the Oregon Employment Relations Board enforces a current federal requirement that-as section 2(1)(c) of IP 33 would require-directs unions representing public employees to provide information about the portion of its expenses that were used for collective bargaining.
The Attorney General agrees that "unions representing government employees are subject to a complex array of reporting *980 requirements under federal law" in addition to the disclosures described in the "no" statement, including the obligation to disclose expenses for collective bargaining.[2] The Attorney General argues, however, that the way in which various federal disclosure requirements apply to various unions presents "complexity," and that the certified "no" result statement appropriately focuses on only existing Oregon law because that is "the most immediate and important context." The Attorney General places the disclosures regarding collective bargaining expenses in the category of the less-immediate federal context because the source is federal law, even if the Oregon Public Relations Board enforces the disclosure requirement as a matter of state law. According to the Attorney General, the "no" result statement accurately describes the status quo for Oregon law and substantially complies with the requirements of ORS 250.035(2)(c). **659 We agree with petitioners Lutz and Schwartz that the "no" result statement, as written, is misleading regarding the disclosure obligations to which unions will continue to be subject if IP 33 fails to pass. In the context of this measure, the pertinent status quo includes current obligations to disclose the same information that IP 33 would require unions to disclose, albeit not in a comprehensive manner and not to the Secretary of State. Those current disclosure requirements are not limited to requirements imposed by Oregon law, and the requirements are not limited in the way that the current "no" result statement describes. The "no" result statement must be revised to avoid misleading voters about the scope of current disclosure requirements.
SUMMARY
Finally, a ballot title must provide a "concise and impartial statement" of up to 125 words that summarizes the "state measure and its major effect." ORS 250.035 (2)(d). The summary should "help voters understand what will happen if the measure is approved" and "the breadth of its impact." Fred Meyer, Inc. v. Roberts , 308 Or. 169, 175, 777 P.2d 406 (1989). Both chief petitioners Schworak and Mitchell and petitioners Lutz and Schwartz contend that the summary fails to meet those requirements.
Chief petitioners Schworak and Mitchell take issue with two parts of the summary. They first contend that the sixth bullet point in the summary, which states that the measure would require disclosure of "salaries for certain employees," fails to describe the actual salary disclosure of IP 33, which would require disclosure of "salaries for the government employee union's officers and [the] ten highest paid employees who are not officers." IP 33, § 2(1)(f). Chief petitioners argue that the summary's text suggests that unions would be required to disclose the salaries of government employees who are members of the union, rather than the salaries of union employees. Chief petitioners also assert that disclosure of union officer salaries is a major effect of the measure and, therefore, must be included in the summary. They suggest that the bullet point should read: "salaries for certain union employees and officers."
**660 The Attorney General argues that the phrase "salaries for certain employees" is not misleading because the logical inference based on the surrounding text is that the *981 "employees" are union employees. The Attorney General also argues that the summary need not mention "officers," because union officers are necessarily included in the catch-all phrase "certain employees."
We agree with the chief petitioners that the proposed summary should clarify that the "certain employees" are union employees. As worded, that portion of the summary is confusing and fails to adequately inform voters that IP 33 will require the disclosure of salaries paid to employees of the union . However, the Attorney General does not need to clarify that officer salaries must be disclosed. Petitioners have failed to persuade us that reporting salaries of officers is sufficiently distinct from the reporting of "certain union employees," which the summary-once revised-will identify.
Additionally, chief petitioners argue that the summary should mention the requirement of IP 33 that unions send financial reports directly to represented employees. Chief petitioners contend that receiving the comprehensive reports represents a significant change for employees that the summary should describe. In response, the Attorney General emphasizes that the summary already describes the information as publicly available through a searchable online database. Given that public dissemination of the disclosed information, the Attorney General argues that the fact that copies of the information will also be sent directly to represented employees is not sufficiently significant to be required in the summary. Given the word-limit and the absence of information about the burden the provision of the reports will impose on unions, we conclude that the summary need not specifically describe the requirement that reports be sent directly to union members.
Petitioners Lutz and Schwartz raise two challenges of their own to the summary. First, they argue that the summary does not adequately describe current law because it fails to explain that unions already are required to disclose much of the information that IP 33 requires unions **661 to disclose to the Secretary of State. We disagree. Unlike the caption, the summary adequately describes the current disclosures required by state and federal law without inaccurately suggesting limitations on those disclosure obligations. In light of the word limit, the summary adequately describes the relevant existing disclosure law.
Second, petitioners Lutz and Schwartz challenge the summary's failure to describe a major effect of the measure-that the law requires the Secretary of State to collect, publish, and audit the reports. The Attorney General renews her argument that the secretary's oversight is not a major effect of IP 33, so it need not be described in the summary, but we have rejected that argument.
We agree with petitioners Lutz and Schwartz that the summary must describe the significant new obligations that IP 33 would impose on the secretary regarding creating and maintaining the internet database and adding a new area of oversight responsibility. Without those details, the summary fails to substantially comply with the requirement that it describe the "measure and its major effect." ORS 250.035(2)(d).
CONCLUSION
To summarize, we refer the ballot title for IP 33 to the Attorney General for the following modifications: (1) the caption to include the role of the Secretary of State; (2) the "no" result statement to correctly describe the current, required disclosures that correlate to the proposed disclosures under IP 33; and (3) the summary to include both the role of the Secretary of State and that the measure requires disclosure of union employee salaries.
Ballot title referred to Attorney General for modification.

IP 33 defines "government employee union" as "a public employee labor organization." IP 33, § 4(3).

The requirement to which the parties refer, and the likely source of the disclosure requirement in IP 33, § 2(1)(c), is imposed by Chicago Teachers Union v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed. 2d 232 (1986). As this court has explained, a union that exclusively represents public employees is authorized to charge all public employees with the costs of collective bargaining in order "to distribute fairly the cost of [collective bargaining] activities among those who benefit"-so called "fair share" payments. Elvin v. OPEU , 313 Or. 165, 167, 832 P.2d 36 (1992) (quoting Abood v. Detroit Board of Education, 431 U.S. 209, 222, 97 S.Ct. 1782, 1792-93, 52 L.Ed. 2d 261 (1977) ). However, "[t]o prevent compulsory subsidization of a union's ideological activity by nonunion public employees, * * * the Supreme Court in Chicago Teachers Union v. Hudson, supra , announced three procedural safeguards to insure the protection of a nonunion employee's First Amendment rights." Elvin , 313 Or. at 168-69, 832 P.2d 36 (citing Chicago Teachers Union, 475 U.S. at 305-07, 106 S.Ct. 1066 ). Those safeguards include that the union must provide nonunion employees with information about how the expenses for collective bargaining were determined as well as a procedure for objecting to the "fair share" calculation. Elvin , 313 Or. at 169, 832 P.2d 36.