On petition to review ballot title filed June 20, considered and under advisement on August 6; ballot title referred to Attorney General for modification October 10, 2019

Julie PARRISH,
*Petitioner,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S066812)

450 P3d 973

The Attorney General certified a ballot title for Initiative Petition 13 (2020) (IP 13). Petitioner challenged the certified ballot title on the grounds that its caption, "yes" and "no" vote result statements, and summary did not substantially comply with the requirements of ORS 250.035. *Held*: The Attorney General's certified ballot title for IP 13 does not substantially comply with the requirements of ORS 250.035.

The ballot title is referred to the Attorney General for modification.

En Banc

Eric Winters, Wilsonville, filed the petition for review and reply for petitioner.

Benjamin Gutman, Solicitor General, Salem, filed the answering memorandum for respondent. Also on the answering memorandum was Ellen F. Rosenblum, Attorney General.

Aruna A. Masih, Bennett, Hartman, Morris & Kaplan, LLP, Portland, filed the memorandum for *amicus curiae* Becca Uherbelau.

GARRETT, J.

The ballot title is referred to the Attorney General for modification.

**GARRETT, J.**

Petitioner Parrish challenges the Attorney General's certified ballot title for Initiative Petition 13 (2020) (IP 13). Intervenor Uherbelau intervenes generally in support of the Attorney General's certified ballot title. We review the ballot title for substantial compliance with ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review). For the reasons explained below, we conclude that the ballot title for IP 13 does not substantially comply with ORS 250.035(2) in several respects, and we therefore refer it to the Attorney General for modification.

If adopted, IP 13 would amend Article IX of the Oregon Constitution to add a new section, section 16. Subsection 16(1) would require the State Treasurer to "calculate the unfunded actuarial liability of any public employee retirement program or system as of December 31, 2022." Section 16 would further provide as follows:

"(2)   Beginning January 1, 2023, the state and its political subdivisions, including home rule jurisdictions, may not:

"(a)   Accrue unfunded actuarial liability in excess of the amounts calculated under subsection (1) of this section.

"(b)   May not borrow money or pledge assets or revenues to comply with subsection (2) of this section.

"(3)   The prohibition in subsection 2(b) of this section does not apply to indebtedness incurred on or before the effective date of this 2020 measure.

"(4)   Nothing in this section affects the retirement benefits an employee has accrued as of December 31, 2022."

A state measure's ballot title has three statutory components: (1) a caption of not more than 15 words that reasonably identifies the measure's subject matter; (2) simple and understandable statements of 25 words or less that describe the result of a 'yes' vote and a 'no' vote; and (3) a concise and impartial statement of no more than 125 words that summarizes the measure. ORS 250.035(2).

For IP 13, the Attorney General certified the following ballot title:

> "**Amends Constitution: Governments may not 'accrue' unfunded actuarial liability for public pensions; Treasurer calculates; effects unclear**
>
> "**Result of 'Yes' Vote:** 'Yes' vote prohibits governments from 'accruing' unfunded actuarial liability in public pensions above 2022 level calculated by Treasurer; effect unclear. Prohibits borrowing to comply.
>
> "**Result of 'No' Vote:** 'No' vote rejects proposed constitutional amendment. Treasurer not required to calculate unfunded actuarial liability. State retains constitutional authority to issue bonds to finance pension liabilities.
>
> "**Summary:** Pension programs have unfunded actuarial liability if the benefits they expect to owe exceed the expected value of available funds. Liability can increase for many reasons, including low investment returns or increased pensioner longevity. Constitution currently permits state to issue bonds for pension liabilities. The proposed constitutional provision requires the Treasurer to calculate every public pension's unfunded actuarial liability as of December 31, 2022. Measure provides that, beginning January 1, 2023, governments may not 'accrue' (undefined) additional unfunded actuarial liability. Governments may not borrow, or pledge assets or revenues, to comply. Other effects unclear; measure does not explain when a government 'accrues' unfunded actuarial liability or the consequences if factors beyond government control result in an increase. Measure does not affect benefits accrued through 2022."

Petitioner is a chief petitioner of IP 13 and is an Oregon elector who timely submitted written comments to the Secretary of State on the draft ballot title; she is therefore entitled to seek review in this court of the certified ballot title. *See* ORS 250.085(2) (setting out that latter requirement). Petitioner challenges all parts of the certified ballot title.

## CAPTION

Turning first to the caption, Oregon law requires a caption "that reasonably identifies the subject matter of the state measure." ORS 250.035(2)(a). The caption should "state or describe the proposed measure's subject matter 'accurately, and in terms that will not confuse or mislead

potential petition signers and voters.'" *Kain/Waller v. Myers*, 337 Or 36, 40, 93 P3d 62 (2004) (quoting *Greene v. Kulongoski*, 322 Or 169, 174-75, 903 P2d 366 (1995)). The "subject matter" is the "actual major effect" of a measure or, if the measure has more than one major effect, all such effects (to the limit of the available words). *Markley/Lutz v. Rosenblum*, 362 Or 531, 534, 413 P3d 966 (2018). To identify the "actual major effect" of a measure, the court considers the "changes that the proposed measure would enact in the context of existing law." *Rasmussen v. Kroger*, 350 Or 281, 285, 253 P3d 1031 (2011). Petitioner raises several challenges to the caption, and we agree that the caption must be modified, as we explain below.

Petitioner argues that the caption does not substantially comply with ORS 250.035(2)(a) for two principal reasons. First, petitioner argues that the caption fails to describe an important actual major effect of IP 13 that could be included notwithstanding the 15-word limit. Specifically, petitioner notes that, currently, the Oregon Constitution specifically allows for bonding to finance public pension liabilities and that dozens of government entities around the state have issued pension obligation bonds to finance their pension debt. Therefore, she contends, IP 13's prohibition on borrowing to finance unfunded actuarial liability is an actual major effect of the proposed measure that belongs in the caption.

In response, the Attorney General argues that it is unnecessary to include the prohibition on borrowing in the caption because it is unclear whether, as a practical matter, the proposed measure would or could prevent governments from accruing unfunded actuarial liability, particularly if unfunded actuarial liability results from market factors beyond a government body's control. Therefore, the Attorney General contends, the prohibition on borrowing is subsumed within the phrase "effects unclear." We disagree. Regardless of the uncertainty that the Attorney General identifies as to the meaning of "accrue," which we address below, IP 13 on its face would restrict the use of borrowing to finance unfunded pension liabilities, and that restriction is a significant "change[] that the proposed measure would enact in

the context of existing law." *See Rasmussen*, 350 Or at 285. As such, a description of that effect must be included in the caption, if the word limit permits it. *See Markley/Lutz*, 362 Or at 534.

Petitioner's second argument is that the caption's inclusion of the phrase "effects unclear" is improper. Here, petitioner raises several points. She notes that the phrase "effects unclear" could be interpreted, in context, to apply either to the measure as a whole or, more narrowly, to the immediately preceding phrase, "Treasurer calculates." However, petitioner points out, the Solicitor General, in his letter accompanying the certified ballot title, described the ways in which the Attorney General deemed IP 13 to be ambiguous, none of which concerned the Treasurer's duty to calculate or the measure as a whole. Rather, the ambiguities identified by the Solicitor General dealt specifically with the provision prohibiting the accrual of additional unfunded actuarial liability. For those reasons, petitioner argues, including the broad phrase "effects unclear" in the caption is unhelpful, inaccurate, and misleading.

More generally, petitioner argues that, in using the phrase "effects unclear," the caption identifies ambiguity in the subject matter of IP 13 where none exists. According to the Solicitor General's letter, IP 13 is ambiguous because (1) it is not clear what options would be available to a government body if that body were to determine that it would not have sufficient funds to pay all retirement debt after 2022; (2) the proposed measure does not identify precisely when or how often, after 2022, a government body must determine if its unfunded actuarial liability has increased; and (3) the measure does not define the term "accrue." Petitioner suggests that those concerns are misguided. She argues that the actual major effects of IP 13 are "straightforward": (1) to require the Treasurer to calculate the unfunded actuarial liability of public pensions; (2) to prohibit public employers from accruing additional unfunded actuarial liability for pensions after 2022; and (3) to prohibit public employers from borrowing to meet that obligation. Petitioner contends that how a government might respond to noncompliance with IP 13 is not the "subject matter" or an "actual major effect" of

IP 13. Thus, in petitioner's view, the Attorney General's use of the phrase "effects unclear" to reflect that uncertainty, amounts to prohibited "speculation about potential secondary effects" of the proposed measure. *See Kane v. Roberts*, 310 Or 423, 428, 799 P2d 639 (1990) (discussing "major effect" of ballot title summary, stating that speculation about secondary effects has no place in any part of ballot title).

Petitioner also argues that the absence of a definition for "accrue" in IP 13 does not render the proposed measure ambiguous. Petitioner argues that the meaning of the word "accrue" is neither the subject matter nor the actual major effect of IP 13, and, therefore, speculation about when unfunded actuarial liability may "accrue" does not belong in the caption and cannot supply a basis for saying that the measure's effects are "unclear." Moreover, to the extent that the meaning of "accrue" is unclear, this court's case law suggests that the proper way to address that problem is to put the word in quotation marks, possibly followed by the word "undefined," or to use other words that convey the idea that the measure is unclear on that particular point. *Wolf v. Meyers*, 343 Or 494, 501-03, 173 P3d 812 (2007).

Although we do not agree with petitioner's contention that the meaning of IP 13 is, in every respect, "clear and straightforward," we agree that the phrase "effects unclear" in the caption is unhelpful and fails to describe the initiative's subject matter, as required. We agree with the Attorney General that the proposed measure's failure to define "accrue" is a source of ambiguity that should be noted in the caption, but that should be addressed by putting that word in quotation marks and following it with the word "undefined," as recommended in *Wolf*. (In fact, adding the word "undefined" is important in this context to avoid creating the impression that the term "accrue" is defined by the proposed measure.) The other concerns that the Attorney General and intervenor have raised regarding the lack of clarity as to how the proposed measure would apply to government bodies or what the consequences would be for noncompliance do not, strictly speaking, bear on the "subject matter" of IP 13 or a change in existing law; they are in the nature of secondary effects that should not be included in the caption. *See Kane*, 310 Or at 428.

Intervenor, for her part, asserts that the phrase "unfunded actuarial liability" is ambiguous and should also be placed in quotation marks. The Attorney General responds that, although IP 13 does not define the phrase, "unfunded actuarial liability" has an accepted meaning under Oregon law. We agree with the Attorney General. Under ORS 238.605(2), for purposes of the administration of the Public Employees Retirement System, unfunded actuarial liability is determined "by calculating the difference between the actuarial value of the current and prospective liabilities of the system and the actuarial value of the assets of the system." The proposed measure's text is consistent with that meaning. The use of quotation marks around the word "unfunded actuarial liability" in the caption, therefore, is not necessary to prevent IP 13 from being confusing or misleading.

For the reasons stated, we refer the caption to the Attorney General for modification.

### "YES" AND "NO" VOTE RESULT STATEMENTS

Petitioner also challenges the "yes" and "no" vote result statements. For convenience, we set out those statements again:

> "**Result of 'Yes' Vote:**  'Yes' vote prohibits governments from 'accruing' unfunded actuarial liability in public pensions above 2022 level calculated by Treasurer; effect unclear. Prohibits borrowing to comply.

> "**Result of 'No' Vote:**   'No' vote rejects proposed constitutional amendment. Treasurer not required to calculate unfunded actuarial liability. State retains constitutional authority to issue bonds to finance pension liabilities."

A "yes" result statement must be a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved." ORS 250.035(2)(b). The "yes" result statement should describe "the most significant and immediate" effects of the ballot initiative for "the general public." *Lutz/Schworak v. Rosenblum*, 362 Or 651, 657, 413 P3d 975 (2018) (internal quotation marks omitted). Petitioner contends that the "yes" result statement for IP 13 does not substantially comply

with ORS 250.035(2)(b) because, by using the phrase "effect unclear," it implies ambiguity where none exists. Moreover, she argues, to the extent that the meaning of the word "accrue" is unclear, that problem is adequately addressed through the use of quotation marks. Petitioner asserts that, because it uses the words "effect unclear," the "yes" result statement is not understandable in that it does not describe what about the proposed measure is unclear.

As explained above, we reject petitioner's premise that IP 13 is clear in every respect. However, for the same reasons that we concluded that the caption does not substantially comply with ORS 250.035(2)(a), we conclude that the "yes" result statement does not substantially comply with ORS 250.035(2)(b). The ambiguity regarding the term "accrue" is adequately addressed by putting that word in quotation marks, followed by the word "undefined." Moreover, the use of the phrase "effect unclear" does not fulfill the statutory requirement that the "yes" result statement should describe "the most significant and immediate" effects of the proposed measure. As we explained in connection with the caption, the lack of clarity in IP 13 concerning how a governmental entity would comply with the new constitutional provision or the consequences that would flow from a failure to comply is not a change that IP 13 would effect on existing law. We therefore refer the "yes" result statement to the Attorney General for modification.

A "no" result statement should be a "simple and understandable statement of not more than 25 words that describes the result if the state measure is rejected." ORS 250.035(2)(c). A "no" result statement should address the substance of current law on the subject matter of the proposed measure and "summarize the current law accurately." *Markley/Lutz*, 362 Or at 538. In other words, the "no" result statement should describe the "status quo," *Lutz/Schworak*, 362 Or at 657 (internal quotation marks omitted), and "perform its function in advising potential voters as to the choice they are being asked to make." *Whitsett v. Kroger*, 348 Or 243, 252, 230 P3d 545 (2010).

Petitioner argues that the "no" result statement is unsatisfactory because it fails to identify laws that would

remain in place if voters reject IP 13, thereby depriving them of critical information. Specifically, she asserts that the "no" result statement does not expressly state that governments would be able to continue to accrue unfunded actuarial liability for their pensions, which has major consequences for taxpayers, pensioners, and others. However, that point is implicit in the phrase, "State retains constitutional authority to issue bonds to finance pension liabilities." Petitioner's argument is not well taken.

Intervenor also takes issue with the "no" result statement. Specifically, she contends that the sentence, "Treasurer not required to calculate unfunded actuarial liability," is misleading because it does not contain enough information to fully inform the voters about the status quo. We agree. That statement, without more, could leave voters with the incorrect impression that, under existing law, unfunded pension liabilities are not calculated by anyone. The "no" result statement, therefore, does not summarize the current law accurately or advise voters of the choice they are being asked to make. We refer the "no" result statement to the Attorney General for modification.

## SUMMARY

The ballot title summary must be a "concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." ORS 250.035 (2)(d). Petitioner contends that the summary for IP 13 does not comply with ORS 250.035(2)(d) because it is not impartial. That is so, according to petitioner, because the summary describes two reasons outside a government body's control for an increase in pension liability, but it does not describe reasons that pension liability might increase that are within the government body's control. Petitioner also objects to the inclusion in the summary of the following statement: "[M]easure does not explain when a government 'accrues' unfunded actuarial liability or the consequences if factors beyond government control result in an increase." Petitioner argues that the purpose of the summary is to describe what the proposed measure does; referring to the fact that the measure does not specify consequences for noncompliance, she contends, is inappropriate. Finally,

petitioner reprises her criticism of the phrase, "other effects unclear" as unhelpful.

As an initial matter, the question of impartiality aside, listing any reasons why a governmental entity would accrue unfunded actuarial liability (be they within or outside a government's control) is unnecessary in the summary. A list of such reasons does not summarize any part of the measure, and it is not an effect of the measure.

On the other hand, given the purpose of the summary and the larger number of words available, we do not think that it is inappropriate for the summary to include language reflecting the Attorney General's judgment that some of the effects of the measure are unclear. Unlike the uses of a similar phrase earlier in the ballot title, the phrase "other effects unclear" in the summary is followed by a semicolon and then specific examples of ways in which the Attorney General considers the effects of the measure to be unclear. Importantly, that wording comes near the end of the summary and follows other wording describing the effects of the measure. Given that context, we reject petitioner's argument that the inclusion of the phrase "other effects unclear" in the summary causes a lack of "substantial compliance" with ORS 250.035(2)(d).

The ballot titled is referred to the Attorney General for modification.