On petitions to review ballot title filed January 7, considered and under advisement on February 25; ballot title referred to Attorney General for modification April 9, 2020

Tera HURST,
*Petitioner,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S067329) (Control)

Willis VAN DUSEN
and Janet Steele,
*Petitioners,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(S067333)

461 P3d 978

The Attorney General certified a ballot title for Initiative Petition 50 (2020) (IP 50). Petitioners challenge the certified ballot title on the grounds that its caption, "yes" and "no" vote result statements, and summary did not substantially comply with the requirements of ORS 250.035. *Held*: The Attorney General's certified ballot title for IP 50 does not substantially comply with the requirements of ORS 250.035.

The ballot title is referred to the Attorney General for modification.

En Banc

Steven C. Berman, Stoll Stoll Berne Lokting & Shlachter P.C., Portland, filed the petition for review and reply memorandum for petitioner Tera Hurst.

Steve Elzinga, Sherman, Sherman, Johnnie & Hoyt LLP, Salem, filed the petition for review and reply memorandum for petitioners Willis Van Dusen and Janet Steele.

Greg Rios, Assistant Attorney General, Salem, filed the answering memorandum for respondent. Also on the

answering memorandum were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

NAKAMOTO, J.

The ballot title is referred to the Attorney General for modification.

## NAKAMOTO, J.

In these consolidated ballot title review cases, petitioner Hurst and petitioners Van Dusen and Steele challenge the Attorney General's certified ballot title for Initiative Petition 50 (2020) (IP 50). We review the ballot title for substantial compliance with ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review). We conclude that certain of petitioner Hurst's arguments that the ballot title does not substantially comply with ORS 250.035(2) are well taken, and we refer the ballot title to the Attorney General for modification.

If adopted, IP 50 would amend ORS 468A.205, which currently sets aspirational greenhouse gas emissions reduction goals, including the goal of achieving greenhouse gas levels that are at least 75% below 1990 levels by the year 2050. ORS 468A.205(1)(c). The current statute also expressly provides that it does not create any additional regulatory authority for any agency of the executive department. ORS 468A.205(3). IP 50 amends ORS 468A.205 to mandate staged reductions in greenhouse gas emissions from fossil fuel and industrial sources (including achieving greenhouse gas emissions levels that are "at least 100 percent below 1990 levels" by 2050); to require the Environmental Quality Commission (EQC) to adopt rules to ensure compliance with the new greenhouse gas emissions limits; and to require the Department of Environmental Quality to enforce the rules that the EQC adopts.

For IP 50, the Attorney General certified the following ballot title:

### "Greenhouse gas emissions from industry, fossil fuels must be eliminated by 2050; requires rules, enforcement

"**Result of 'Yes' Vote:** 'Yes' vote requires Oregon greenhouse gas emissions from industry, fossil fuels to be eliminated by 2050; Environmental Quality Commission to adopt rules, enforce compliance.

"**Result of 'No' Vote:** 'No' vote retains current nonbinding greenhouse gas emission reduction goals (levels at least 75% below 1990 levels by 2050); new rules not required.

"**Summary:** Currently, state law establishes non-binding greenhouse gas emission reduction goals, targeting levels at least 75% below 1990 levels by 2050. Compliance with reduction goals is not required by law. Measure requires elimination of Oregon greenhouse gas emissions from fossil fuel and industrial sources by 2050. Additionally, Environmental Quality Commission (EQC) must adopt rules to ensure compliance by February 1, 2021. The EQC will have rulemaking authority to enact programs and policies to reduce emissions; regulate sources of greenhouse gas emissions from imported electricity, transportation fuels, and natural gas; and to charge fees, levy fines. EQC shall seek to ensure protection of communities disproportionately impacted by air pollution and climate change."

Petitioner Hurst and petitioners Van Dusen and Steele are Oregon electors who timely submitted written comments to the Secretary of State on the draft ballot title and who are therefore entitled to seek review of the certified ballot title in this court. ORS 250.085(2). Petitioner Hurst and petitioners Van Dusen and Steele challenge all parts of the certified ballot title. For the reasons explained below, we agree with some of petitioner Hurst's arguments regarding the ballot title caption, the "yes" result statement, and the summary. We find the arguments of petitioners Van Dusen and Steele unpersuasive and reject them without discussion.

A state measure's ballot title has three statutory components: (1) a caption of not more than 15 words that reasonably identifies the measure's subject matter; (2) simple and understandable statements of 25 words or less that describe the result of a "yes" vote and a "no" vote; and (3) a concise and impartial statement of no more than 125 words that summarizes the measure. ORS 250.035(2).

## CAPTION

Turning first to the caption, Oregon law requires a caption "that reasonably identifies the subject matter of the state measure." ORS 250.035(2)(a). The caption should "state or describe the proposed measure's subject matter 'accurately and in terms that will not confuse or mislead potential petition signers and voters.'" *Kain/Waller v. Myers*, 337 Or 36, 40, 93 P3d 62 (2004) (quoting *Greene v. Kulongoski*,

322 Or 169, 174-75, 903 P2d 366 (1995)). A measure's "subject matter" is its "actual major effect" or, if the measure has more than one major effect, all such effects (to the extent possible given the word limit). *Fletchall v. Rosenblum*, 365 Or 98, 103, 442 P3d 193 (2019). To identify the "actual major effect" of a measure, the court considers the changes that a proposed measure would enact in the context of existing law. *Id*. Petitioner Hurst (hereafter referred to as petitioner) raises several challenges to the caption, and we agree that the caption must be modified, as we explain below.

For convenience, we repeat the certified ballot title caption: "Greenhouse gas emissions from industry, fossil fuels must be eliminated by 2050; requires rules, enforcement[.]" Petitioner argues that that caption does not substantially comply with ORS 250.035(2)(a) for three reasons.

First, petitioner contends that the first clause of the caption does not substantially comply with the requirements of ORS 250.035(2)(a) because it is likely to be misinterpreted. She explains that the ballot measure provides that greenhouse gas emissions from two sources—industry and fossil fuels—shall be reduced, but, she argues, the placement of the comma between the words "industry" and "fossil fuels" could reasonably lead a voter to the misimpression that IP 50 requires that "fossil fuels must be eliminated by 2050." That is, she asserts, the comma after "industry" appears to segregate the first clause of the caption into two separate limitations: "greenhouse gas emissions from industry" and "fossil fuels." If a voter understood the phrase "greenhouse gas emissions" to relate only to the phrase "from industry," the caption would erroneously imply that IP 50 broadly requires the elimination of fossil fuels rather than the elimination of *emissions* from fossil fuels.

The Attorney General responds that most readers would infer that the comma between "industry" and "fossil fuels" means "and." For that reason, the Attorney General contends that the most plausible reading of the clause is that both "industry" and "fossil fuels" are the objects of the preposition "from," which immediately precedes the word "industry" and, therefore, that voters would understand

that IP 50 requires the reduction of emissions from industry and from fossil fuels.

We agree with petitioner that the Attorney General's certified caption is likely to be misread by some voters as requiring the elimination of fossil fuels by 2050, and, thus, the caption is likely to mislead them. The placement of the comma between "industry" and "fossil fuels" could, as the Attorney General urges, be read as "and," but we cannot say that petitioner's fear of misinterpretation is unfounded. The comma between "industry" and "fossil fuels" makes the first clause of the caption ambiguous, and that ambiguity could confuse some voters. We acknowledge that the summary explains the requirement in full in the third sentence; it clarifies that IP 50 addresses "Oregon greenhouse gas emissions from fossil fuel and industrial sources." We also agree that all parts of the ballot title should be read consistently, as a whole. However, the possibility for confusion arising out of the placement of the comma is significant, and so we conclude that the caption for IP 50 does not substantially comply with the requirements of ORS 250.035(2)(a) and must be modified.

Second, petitioner asserts that the caption's use of the word "eliminated" is inaccurate to describe the requirements for greenhouse gas emissions set out in IP 50. We discuss only one of her arguments on that point, namely, that the word "eliminated" is inaccurate because it implies suddenness or immediacy, but the proposed ballot measure calls for a two-step phase-out of greenhouse gas emissions from industrial and fossil fuel sources, with the first reduction occurring by 2035 and the second by 2050. The Attorney General responds that the caption accurately captures the major effects of IP 50 and that the ballot title's summary sufficiently clarifies that the reductions will occur incrementally over time.

We disagree that the use of the word "eliminates" in the caption conveys some notion of suddenness that is in conflict with the staged reductions in greenhouse gas emissions required by IP 50. As petitioner points out, the dictionary defines the word "eliminate" to mean "to cast out : REMOVE, EXPEL, EXCLUDE, DROP, OUST *** to cause the

disappearance of *** get rid of." *Webster's New Third Int'l Dictionary* 736 (unabridged ed 2002). Though the words "to cast out" may imply suddenness, the remainder of the definition of "eliminate" is compatible with a gradual process leading to reduction to zero.

At the same time, however, we perceive that the concern underlying petitioner's objection to the use of the word "eliminates" is that the caption does not reflect that IP 50 requires a two-step phase-out of emissions from industrial and fossil fuel sources. We agree that the graduated phase-out of emissions from those sources is a major effect of the measure that should be reflected in the caption, if available words permit, *Fletchall*, 365 Or at 103, and, at least, in the summary, which we will address in turn.

Petitioner's third challenge to the caption involves its second clause: "requires rules, enforcement." Petitioner argues that "requires rules" is not a major effect of the measure and should not be addressed in the caption. Petitioner contends that making the greenhouse gas emissions limits mandatory as opposed to aspirational and requiring their enforcement are the other significant changes resulting from the measure, and that removing the word "rules" from the second clause would free up an additional word to allow the caption to accurately describe the greenhouse gas emissions phase-out.

We disagree that "requires rules" is not a major effect of IP 50. As already noted, ORS 468A.205(3) currently expressly provides that it does not create any additional regulatory authority for any agency of the executive department. By contrast, IP 50 provides, "The Environmental Quality Commission shall adopt rules to ensure compliance with greenhouse gas emissions limits set forth in subsection (1) of this section." Requiring the EQC to adopt rules is thus an "actual major effect" of the measure, and it is appropriate in this case to explain that in the caption.

To summarize, the Attorney General's certified caption for IP 50 does not substantially comply with the requirements of ORS 250.035(2)(a) insofar as the comma between the words "industry" and "fossil fuels" is likely to

lead to voter confusion, and the caption must be modified to avoid that possibility. We also agree with petitioner that, if available words permit, the caption should refer to the two-step phase-out of greenhouse gas emissions that the measure requires. We reject petitioner's other challenges to the caption.

### "YES" AND "NO" RESULT STATEMENTS

Petitioner also challenges the Attorney General's certified "yes" and "no" result statements. Again, the vote result statements for IP 50 are:

> "**Result of 'Yes' Vote:**  'Yes' vote requires Oregon greenhouse gas emissions from industry, fossil fuels to be eliminated by 2050; Environmental Quality Commission to adopt rules, enforce compliance.

> "**Result of 'No' Vote:**   'No' vote retains current non-binding greenhouse gas emission reduction goals (levels at least 75% below 1990 levels by 2050); new rules not required."

A "yes" result statement must be a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved." ORS 250.035(2)(b). The "yes" result statement should describe "the most significant and immediate effects of the ballot initiative for the general public." *Parrish v. Rosenblum*, 365 Or 597, 603, 450 P3d 973 (2019) (internal quotation marks omitted).

Petitioner contends that the "yes" result statement does not substantially comply with ORS 250.035 (2)(b), because it suffers from the same flaws as the caption. That is, (1) by separating "industry" and "fossil fuels" with a comma, the "yes" result statement erroneously implies that IP 50 requires the elimination of fossil fuels by 2050; (2) the use of the word "eliminated" in the "yes" result statement is at odds with the two-step phase-out of emissions; and (3) in stating "Environmental Quality Commission to adopt rules," the second clause of the "yes" result statement misplaces the focus on the requirement to adopt rules rather than on the more important requirement that the EQC enforce the greenhouse gas emissions benchmarks.

For the reasons explained above with respect to the caption, we agree with petitioner that the comma separating the words "industry" and "fossil fuels" makes the first clause of the Attorney General's certified "yes" result statement ambiguous and therefore open to misinterpretation by a reasonable voter. We conclude that the "yes" result statement must be modified to prevent that possibility for confusion. We reject petitioner's other challenges to the "yes" result statement.

Petitioner also challenges the "no" result statement. The Attorney General's certified "no" result statement for IP 50 states: "'No' vote retains current non-binding greenhouse gas emission reduction goals \*\*\*; new rules not required."

A "no" result statement should be a "simple and understandable statement of not more than 25 words that describes the result if the state measure is rejected." ORS 250.035(2)(c). A "no" result statement should address the substance of current law on the subject matter of the proposed measure and "summarize the current law accurately." *Parrish*, 365 Or at 604. In other words, the "no" result statement should describe the "status quo" and "perform its function in advising potential voters as to the choice they are being asked to make." *Id.*; *accord Whitsett v. Kroger*, 348 Or 243, 251, 230 P3d 545 (2010). Because of those substantive requirements, a "no" result statement generally will not substantially comply with ORS 250.035(2)(c) if it amounts to little more than a declaration that "no" rejects "yes." *Id*.

Petitioner argues that the "no" result statement does not substantially comply with those requirements. In her view, the phrase "new rules not required" is "particularly problematic and unhelpful," because that phrase would describe the result for almost every initiative not approved by the voters. Quoting *Novick/Crew v. Myers*, 337 Or 568, 574, 100 P3d 1064 (2004), petitioner argues that the "no" result statement instead should "notify petition signers and voters of the result or results of enactment that would have the greatest importance to the people of Oregon." In particular, petitioner contends that, rather than including "new rules not required," the "no" result statement should address IP 50's

requirement that the new greenhouse gas emissions levels be enforced by adding the phrase "no authority to enforce."

Petitioner's arguments respecting the "no" result statement are not well taken. For one thing, petitioner erroneously relies on *Novick/Crew* for a requirement—a focus on results of enactment—that is applicable to "yes" statements in ballot titles, not to "no" result statements. Additionally, she identifies a problem—the failure to focus on the measure's new mandatory enforcement of emission reductions—that is belied by the text. The "no" statement correctly refers to the current status of the emission reduction "goals" in the statute as "non-binding." The word "non-binding" fully conveys that the EQC currently has no authority to enforce greenhouse gas emissions goals set out in ORS 468A.205. Thus, eliminating "new rules not required" in favor of "no authority to enforce" would serve no useful purpose.

Applying the standards for "no" statements, we conclude that the certified "no" result statement accurately identifies and describes current law. In light of the express requirement in IP 50 that the EQC adopt rules ensuring compliance with greenhouse gas emissions limits, it is appropriate and accurate in this case for the "no" result statement to additionally explain that the status quo does not require the EQC to promulgate rules relating to the achievement of the greenhouse gas emissions goals set out in the current statute. *See* ORS 468A.205 (expressly stating aspirational greenhouse gas emissions levels are not accompanied by any additional regulatory authority for any agency of the executive department). The Attorney General's certified "no" result statement substantially complies with the requirements of ORS 250.035(2)(c).

## SUMMARY

Under ORS 250.035(2)(d), the summary must be a "concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." The purpose of a ballot title's summary is to give voters enough information to understand what will happen if the initiative is adopted. *McCann/Harmon v. Rosenblum*, 354 Or 701, 708, 320 P3d 548 (2014).

To repeat, the Attorney General's certified summary for IP 50 is as follows:

"**Summary:** Currently, state law establishes non-binding greenhouse gas emission reduction goals, targeting levels at least 75% below 1990 levels by 2050. Compliance with reduction goals is not required by law. Measure requires *elimination* of Oregon greenhouse gas emissions from fossil fuel and industrial sources by 2050. Additionally, Environmental Quality Commission (EQC) must adopt rules to ensure compliance by February 1, 2021. The EQC will have rulemaking authority to enact programs and policies to reduce emissions; regulate sources of greenhouse gas emissions from imported electricity, transportation fuels, and natural gas; and to charge fees, levy fines. EQC shall seek to ensure protection of communities disproportionately impacted by air pollution and climate change."

(Emphasis added.)

Petitioner complains that the summary does not substantially comply with the requirements of ORS 250.035 (2)(d), because it suffers from some of the same flaws as the caption and the "yes" result statement. Petitioner claims that the summary does not adequately notify voters that the greenhouse gas emissions limits of IP 50 would be enforceable. She also objects to the use of the word "elimination," contending that that word does not accurately describe the two-step phase-out of greenhouse gas emissions from fossil fuels and industrial sources that the measure requires.

We reject petitioner's contention that the summary does not adequately convey that the greenhouse gas emissions levels set out in IP 50 are enforceable. The summary provides that IP 50 "requires elimination" of greenhouse gas emissions from fossil fuel and industrial sources and that the EQC "must adopt rules to ensure compliance." The words "requires" and "must adopt" are mandatory and can only refer to the EQC's authority to enforce the greenhouse gas emissions limitations set out in the measure. For that reason, we reject petitioner's argument that the summary fails to emphasize that IP 50 requires the EQC to ensure compliance with the measure's emission limits and that it

does not, therefore, "substantially comply" with the requirements of ORS 250.035(2)(d).

However, as with respect to the caption, we agree with the concern that we perceive to underly petitioner's arguments about the use of the word "elimination," namely, that the summary fails to address the fact that the greenhouse gas emissions reductions mandated by IP 50 are to occur in two steps, with the requirement that the first major reduction in emission levels be completed by 2035. Indeed, nothing in the Attorney General's certified summary suggests the existence of a deadline before 2050. As we have stated, we agree with petitioner that the inclusion of a two-step phase-out of greenhouse gas emissions is a major effect of IP 50. As such, it must be included in the summary. We therefore conclude that the Attorney General's certified summary for IP 50 does not substantially comply with the requirements of ORS 250.035(2)(d) in that respect and refer the summary to the Attorney General for modification.

The ballot title is referred to the Attorney General for modification.