On petitions to review ballot title filed January 6, considered and under advisement February 15; ballot title referred to Attorney General for modification April 29, 2022

Christy MASON,
*Petitioner,*

*v.*

Ellen ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S069163 (Control))

C. Norman TURRILL
and Christopher Cobey,
*Petitioners,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S069164)

508 P3d 504

The Attorney General certified a ballot title for Initiative Petition 34 (2022) (IP 34), an initiated measure that, if placed on the ballot and enacted by the people, would change Oregon's process for legislative and congressional redistricting after each decennial census by (1) repealing Article IV, sections 6 and 7, of the Oregon Constitution, which (among other things) provide for reapportionment of the state's legislative districts after each decennial census by the legislature; (2) replace the repealed sections of Article IV with new sections 6 and 7, which would create a new 12-member redistricting commission and assign the task of reapportioning the state's legislative and congressional districts after each decennial census to that commission. IP 34 would also effectively repeal the redistricting plans for the current decennium that were enacted by the legislature in 2021 and replace them, in 2023, with plans that the new commission would adopt. Two sets of petitioners challenged the ballot title certified by the Attorney General for IP 34, arguing that the caption, yes and no result statements, and summary failed to substantially comply with the requirements set out in ORS 250.035(2) for ballot titles of state measures. *Held*: The caption and summary of the certified ballot title do not substantially comply with the requirements set out in ORS 250.035(2)(a) and (d) and must be modified.

The ballot title is referred to the Attorney General for modification.

En Banc

Steven C. Berman, Stoll Stoll Berne Lokting & Shlachter, P.C., Portland, filed the brief for petitioner Christy Mason.

Daniel W. Meek, Portland, filed the brief for petitioners C. Norman Turrill and Christopher Cobey.

Benjamin Gutman, Solicitor General, Salem, filed the brief for respondent. Also on the brief was Ellen F. Rosenblum, Attorney General.

DeHOOG, J.

The ballot title is referred to the Attorney General for modification.

**DeHOOG, J.**

This proceeding concerns the ballot title certified by the Attorney General for Initiative Petition 34 (2022) (IP 34). Two sets of electors who are dissatisfied with the Attorney General's ballot title have petitioned this court for review under ORS 250.085(2). Both petitions argue that the ballot title does not substantially comply with the requirements of ORS 250.035. We agree with certain of the arguments raised in the petitions and, therefore, refer the ballot title to the Attorney General for modification.

## I.   BACKGROUND

IP 34 is directed at changing Oregon's process for reapportioning legislative and congressional districts after each decennial census. It would do so, first, by repealing two sections of Article IV of the Oregon Constitution. Section 6, the more significant of those two sections, initially assigns the task of redrawing Oregon's legislative districts to the Legislative Assembly, and then, if the Legislative Assembly's efforts are unsuccessful, to the Secretary of State. Section 6 also provides for judicial review by this court of the resulting reapportionment plan and the filing of a corrected plan by the Secretary of State if the court determines that the plan under review does not comply with the applicable standards.[1] Second, IP 34 would replace the repealed sections of Article IV with new sections 6 and 7, which together would establish a 12-member "Citizens Redistricting Commission" and assign all redistricting functions—for both legislative *and* congressional districts—to that commission. As a general matter, the new sections 6 and 7 require redistricting processes, including the formation of a redistricting commission, to occur decennially in years ending in the numbers zero and one. Notably, however, they set an anomalous date (2023) for the first application of commission-driven redistricting, with the effect—and for the apparent purpose—of

---

[1] The other provision that IP 34 repeals—Article IV, section 7—provides that "no county shall be divided" in drawing a state Senate district that is made up of more than one county. In *Hovet v. Myers*, 260 Or 152, 155, 489 P2d 684 (1971), this court concluded that that prohibition could not be applied without violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution—and, thus, is unenforceable. Accordingly, the repeal of the provision is of little import in the present case.

immediately repealing and replacing the redistricting plans that were enacted by the Legislative Assembly for the current decennium in 2021, shortly after the release of the results of the 2020 decennial census.

The proposed Article IV, section 6, sets out a complex process for choosing members of the Citizens Redistricting Commission. Registered voters who meet certain residency and party registration requirements, who are not elected office holders, campaign staff, or lobbyists, and who are not closely related to or employed by such individuals, would be eligible to apply for membership in the committee. A panel of three administrative law judges chosen by the Chief Administrative Law Judge of the Office of Administrative Hearings would select 150 individuals from among the qualified applicants to form three sub-pools, with one sub-pool consisting of fifty voters who are registered with the largest political party in the state, another comprising fifty voters who are registered with the second-largest political party in the state, and a third made up of 50 voters whose registration is not with either of the two largest parties. Thereafter, the Secretary of State would randomly select six individuals—two from each of the three sub-pools—to serve on the redistricting commission. In turn, those six individuals would select six more individuals to serve on the commission, again selecting two from each of the three sub-pools. The resulting commission would therefore be made up of 12 registered voters who are not professionally or personally connected to elective politics, four of whom are registered with the state's largest party, four of whom are registered with the state's second-largest party, and four of whom are not registered with either of the state's two largest parties.

The proposed Article IV, section 7, sets out the processes and standards that the redistricting commission would have to follow in drawing new congressional and legislative districts. It includes criteria for redistricting that in many respects are similar to the criteria that, under current *statutes*,[2] the Legislative Assembly must "consider" in

---

[2] Although IP 34 does not expressly repeal any of the statutes that presently control redistricting along with Article IV, section 6, it would effectively nullify those statutes.

congressional and legislative redistricting, though it adds one entirely new criterion: "To the extent practicable," the commission must establish districts that "achieve competitiveness," meaning that "voting blocs" are "substantially and similarly able to translate their popular support into representation in an elected body and that such representation is substantially and similarly reflective of shifts in the electorate's preferences."[3] It provides for public hearings and

---

[3] Specifically, the new constitutional provision would provide:

"(4)(a) The commission shall use a mapping process to establish districts for the state Senate and House of Representatives and congressional districts, using the following criteria, to:

"(A) Comply with provisions of the United States Constitution and the federal Voting Rights Act (42 U.S.C. 1971 et seq.) or its successor law.

"(B) Achieve population equality as nearly as practicable using the total population of Oregon as determined by the decennial census preceding the redistricting process.

"(C) Be geographically contiguous.

"(D) To the extent practicable, and if possible without conflicting with the criteria set forth in subparagraphs (A), (B) and (C) of this paragraph, respect the geographic integrity and minimize the division of a city, county, local neighborhood, government jurisdiction or community of interest or other contiguous population that shares common social and economic interests and is cohesive for purposes of its effective and fair representation.

"(E) To the extent practicable, and if possible without conflicting with the criteria set forth in subparagraphs (A), (B) and (C) of this paragraph, achieve competitiveness.

"(b) The commission shall determine and adopt a measure or measures of competitiveness, as defined in paragraph (d) of this subsection, prior to any vote or discussion regarding any legislative or congressional district plans or proposals. The commission shall then apply such measure or measures when adopting legislative or congressional district plans or proposals.

"(c) When establishing districts under this subsection, the commission may not:

"(A) Consider the place of residence of a holder of or candidate for public office;

"(B) Favor or discriminate against a holder of or candidate for public office or a political party; or

"(C) Create a district for the purpose of or with the effect of diluting the voting strength of any language or ethnic identity group.

"(d) As used in this subsection:

"(A) Common social and economic interests are those common to an urban area, a rural area, an industrial area or an agricultural area and those common to areas in which individuals share similar living standards, use the same transportation facilities, reside in the same watershed, have similar work opportunities or have access to the same media of communication relevant to the election process. Common social and economic interests

public notice thereof, both before and after a redistricting plan is proposed. It requires an affirmative vote of seven or more commission members to adopt each final redistricting map, with at least one affirmative vote coming from each of the three subgroups. Finally, it authorizes judicial review of the resulting maps for substantial compliance with the above criteria, which any registered voter may obtain by filing a petition.[4]

The Attorney General certified the following ballot title for IP 34:

> **"Amends Constitution: Repeals redistricting process by legislature; creates redistricting commission; equal number Democrats, Republicans, others; 2023 redistricting**
>
> **"Result of 'Yes' Vote:**    'Yes' vote repeals constitutional provisions on state redistricting; creates congressional/state redistricting commission; equal number of Democrats, Republicans, others. Repeals, replaces 2021 map in 2023.
>
> **"Result of 'No' Vote:**    'No' vote retains current redistricting process; legislature draws boundaries of congressional and state legislative districts every ten years. 2021 redistricting remains in force until 2031.
>
> **"Summary:**    Amends Constitution. Oregon Constitution requires legislature to redraw state legislative districts every ten years. Legislature also draws congressional districts. Measure repeals current state constitutional processes; creates twelve-member commission to draw

---

do not include relationships with political parties, incumbents or political candidates.

"(B) Competitiveness means that voting blocs, including partisan and non-affiliated voters, must be substantially and similarly able to translate their popular support into representation in an elected body and that such representation is substantially and similarly reflective of shifts in the electorate's preferences."

[4] In such a review, if this court were to find that a redistricting plan failed to comply with those criteria, it would be required to remand to the commission to make corrections. The process of correction and approval or remand would repeat until the court approved a corrected plan—meaning that no entity other than the commission would ever be involved in producing redistricting plans. That review process would differ from the existing review process, which empowers the Secretary of State and even this court to produce redistricting plans when the plans under review are found not to substantially comply with the relevant criteria.

congressional and state legislative districts. Commission membership restricted based on length of residence/party affiliation, recent political work, political contributions, or family members who engaged in certain political activity. Secretary of State randomly selects six members from applicant group; other members chosen by first six. Four members must be registered with each of largest two political parties, four unaffiliated or from other parties. At least one Democrat, Republican, and other must agree for commission to approve map or take other action. Changes redistricting criteria. Repeals 2021 map; requires redistricting in 2023. Other provisions."

## II.  ANALYSIS

Two petitions are under consideration in this review, one filed by Norman Turrill and Christopher Cobey (Turrill petition), and one filed by Christy Mason (Mason petition). The petitions implicate all three sections of the Attorney General's certified ballot title—the caption, the results statements, and the summary.

### A.  *Caption*

A ballot title must include a caption of "not more than 15 words that reasonably identifies the subject matter of the state measure."[5] ORS 250.035(2)(a). The "subject matter" of a measure is its "actual major effect." *Parrish v. Rosenblum*, 365 Or 597, 600, 450 P3d 973 (2019). If the measure has more than one major effect, its "subject matter" is "all such effects (to the limit of the available words)." *Id.* To identify a measure's "actual major effects," we consider the changes it would enact "in the context of existing law," and then "examine[ ] the caption to determine whether [it] reasonably identifies those effects." *Rasmussen v. Kroger*, 350 Or 281, 285, 253 P3d 1031 (2011). As noted, the Attorney General's certified ballot title for IP 34 contains the following caption: "Amends Constitution: Repeals redistricting process by legislature; creates redistricting commission; equal number Democrats, Republicans, others; 2023 redistricting."

---

[5] The 15-word limit does not include the words "Amends Constitution" that must precede the caption of any initiative measure that would amend the Oregon Constitution. ORS 250.035(2)(a).

Petitioner Mason argues that that caption fails to reasonably identify a highly significant and immediate effect of IP 34: If adopted, it would nullify the legislative and congressional reapportionment plans that the legislature enacted in 2021 for the current decennium and replace them with whatever plans the newly established redistricting commission adopts in 2023. The Attorney General agrees that that change is a major effect of IP 34 that must be included in the ballot-title caption but purports to have done so by including the two-word phrase "2023 redistricting" in the caption. Petitioner Mason argues that that two-word phrase does not explain the effect and might actually mislead voters by, for example, inducing them to believe that IP 34 itself contains redistricting plans that would become effective in 2023. Petitioner Mason also argues that the caption is deficient because it fails to distinguish between legislative and congressional redistricting. She reasons that, because the Oregon Constitution addresses legislative—but not congressional—redistricting, the words "Amends Constitution: Repeals redistricting process by legislature" in the caption could incorrectly suggest to a reader that IP 34 affects only legislative redistricting. To prevent such a misunderstanding, petitioner Mason contends, the caption must distinguish between congressional and state legislative redistricting. Finally, petitioner Mason argues that the phrase "Creates redistricting commission" in the caption is "impermissibly vague" because it does not inform readers that IP 34 actually directs the newly created commission to draw new congressional and legislative districts, leaving open the possibility that the commission's role is merely advisory.

With respect to petitioner Mason's first point, the Attorney General responds that, ideally, the caption would explain with greater clarity and precision that, under IP 34, the legislature's recently enacted redistricting plans for the current decennium would immediately be replaced. But she argues that doing so is impossible within the applicable 15-word limit when, in addition to addressing IP 34's repeal of the current redistricting processes and its creation of a commission that would take on the task of redistricting, the caption also must address the composition of the commission,

as it does here with the phrase "equal number Democrats, Republicans, others." In that regard, the Attorney General relies on *Fletchall v. Rosenblum*, 365 Or 98, 108, 442 P3d 193 (2019) (*Fletchall I*), in which this court held that the ballot-title caption for Initiative Petition 5 (2020)—a measure that also sought to replace the current Legislative Assembly-based process for redistricting with a commission-based process—was required to convey that the membership formula for the proposed commission would give disproportionate representation to residents of rural areas.

Petitioner Mason replies, however, that, in *this* context, the composition of the commission is less significant than other effects of IP 34 and that, therefore, the phrase "equal number Democrats, Republicans, others" should be removed to leave room to address those more significant effects. In so arguing, petitioner Mason does not deny that the composition of the commission that would take over the legislature's primary role in redistricting if IP 34 were adopted is an "actual major effect" of the measure, as that term is used in our ballot-title cases. And, indeed, insofar as voters would view the change to a decision-making body that purports to equalize membership (and thus power) based on party affiliation (or lack thereof) as having great political significance, that change is a "major effect" of IP 34 that should be included in the ballot title caption. *See Fletchall I*, 365 Or at 108 (in ballot measure providing for redistricting by newly created commission, composition of proposed commission in ballot measure was "perhaps the most politically consequential feature" of the measure, in that it effectively inverted the population-based composition of the body that historically had been charged with redistricting (the legislature)—and therefore was a "major effect" of the measure that must be included in the caption).[6]

Similarly, there is little question that the effect of IP 34 that petitioner Mason highlights is a "major effect" that

_____

[6] Petitioner Mason argues that the composition of the redistricting commission in IP 34 is less important than the composition of the redistricting commission in *Fletchall I*, because it does not involve the same kind of explicit "anti-democratic, disproportionate representation favoring rural areas." But that argument only goes to the relative importance of the composition of the IP 34 commission, not to whether it constitutes an "actual major effect" at all.

belongs in the ballot title. If enacted, IP 34 would effectively repeal the redistricting plans for the current decennium that the legislature recently enacted following an extensive public participation process and require their replacement with plans devised by the proposed commission—a change that, again, the voters would likely view as politically significant. Moreover, legislatively enacted plans have the status of law, the repeal of which we have consistently described as a major effect when discussing proposed initiatives.

As to whether the description of the commission's composition must give way to allow room to address that other major effect, this court has often said that a ballot-title caption must identify all actual major effects of a measure "to the limit of the available words." *Parrish*, 365 Or at 600. Thus, one could argue that we have tacitly acknowledged that, at times, the 15 words that ORS 250.035(2)(a) allows will not accommodate all the major changes that a measure would cause to the existing legal landscape. Although such an acknowledgment might in turn suggest that it is sometimes permissible to omit one or more of a measure's actual major effects from its ballot-title caption, that approach could certainly not be justified if it were possible to identify all the recognized major effects within the applicable limit. And, of course, reliance on such an option would have to take into account that what is required by ORS 250.035(2)(a) is that all major effects of a measure—*i.e.*, its "subject matter"—be "*reasonably* identified" in the caption. *See also Greene v. Kulongoski*, 322 Or 169, 174-75, 903 P2d 366 (1995) (caption must describe measure's subject matter "accurately, and in terms that will not confuse or mislead potential petition signers and voters").

Accordingly, to answer petitioner Mason's argument that the "equal numbers Democrat, Republicans, others" portion of IP 34's caption should be excluded to make room for a more informative and less confusing description of the fact that IP 34 would require almost immediate redistricting to replace the plans that the legislature enacted in 2021 for the current decennium, we consider two questions: First, does the present wording "2023 redistricting" reasonably identify that major effect? Second, if not, is it possible to craft a caption that *reasonably* identifies both that major

effect and the composition of the new commission (along with other major effects whose placement in the caption is not disputed)? Only if the answer to both questions is "no" would we need to consider whether it would be appropriate to remove wording describing the composition of the commission from the caption.

In response to the first question, we agree with petitioner Mason that the phrase "2023 redistricting" does not reasonably identify the effect it purports to address. Without any indication that some action will occur respecting "2023 redistricting," it is impossible to say what "effect" those words are attempting to describe.

Turning to the second question, we believe that all the major effects of IP 34 that we have recognized here can reasonably be identified in a 15-word caption. We say that with a caveat: We recognize that a complete explanation— such as petitioner Mason advocates—of the effect she emphasizes would *not* fit in such a caption, given the other major effects that must also be identified. But, as we have indicated, the statutory requirement that a ballot title caption "reasonably identif[y]" the "subject matter" (that is, the major effects) of a measure, ORS 250.035(2)(a), does not mean that each effect must be completely explained. Contrary to petitioner Mason's view, our opinion in *Rasmussen*, does not require the caption here to explain that, in addition to mandating new redistricting in 2023, IP 34 would also nullify redistricting plans recently adopted by the legislature. *Rasmussen* involved a measure that was similar to IP 34 in that it would have adopted a new redistricting process and required that the new process be applied on a given, out-of-cycle, date to replace the existing redistricting plan. 350 Or at 284-86. The flaw in the ballot-title caption at issue there was that, in light of certain wording ("starting 2013"), it could be read, incorrectly, to require that the new redistricting process would apply prospectively, starting on the given date. *Id*. at 286. That sort of flaw can be avoided here without including the full explanation that petitioner Mason seeks.[7]

---

[7] Though we leave it to the Attorney General to come up with the wording that best accomplishes the required objectives, we offer by way of example only the following wording: "Repeals legislature's redistricting process; Creates

That leaves us to consider the other flaws that petitioner Mason purports to find in the ballot-title caption—its failure to separately identify the measure's effects on congressional and legislative redistricting and its failure to clearly convey that the proposed commission's role in redistricting would be actual and not merely advisory. Petitioner Mason argues that both of those purported flaws would confuse or mislead voters, but we are not persuaded. With respect to petitioner's first point, we acknowledge that IP 34 would repeal a constitutional provision that governs only legislative redistricting and would replace it with provisions directed at both legislative and congressional redistricting. We conclude, however, that voters would not need those details to understand that the existing constitutional and statutory scheme for redistricting would effectively be repealed, and a new scheme for redistricting by a commission would take its place. As to the second point, which relies on the fact that the phrase "creates redistricting commission" does not expressly state that the proposed commission would have actual redistricting authority, we note that that phrase is directly preceded in the caption by "Repeals redistricting process by legislature" (or words to that effect). That placement would, in our view, indicate to the average voter that the new commission would replace the legislature in its redistricting role and not merely be advisory.

We next turn to the Turrill petition, which raises three objections to the certified ballot title's caption. The Turrill petitioners first argue that, because it is impossible to include all of IP 34's major effects in the allotted word count, it should dispense with the separate references to "repeal[ing] redistricting process by legislature" and "creat[ing] redistricting commission," and simply state that the measure would "replace" redistricting by the legislature with redistricting by a commission. Because we ultimately conclude that there is sufficient space in a 15-word caption to reasonably identify all of IP 34's major effects, we need

---

redistricting commission; Equal number Democrats, Republicans, others; Requires 2023 redistricting." By separating the 2023 redistricting requirement from the description of repealing and replacing the existing redistricting process, that wording avoids the implication in *Rasmussen* that the new redistricting process would apply only prospectively after the given "starting" date.

not further consider whether the Turrill petitioners' proposed solution is a viable one.

The Turrill petitioners next argue that the caption fails to communicate that IP 34 would "replac[e] a redistricting process performed by individuals who are directly affected by the outcome"—that is, by members of the legislature, whose ability to be reelected may be affected by the results of redistricting—with a redistricting process performed by individuals "with no direct stake in the outcome" (because any person with a professional or financial interest in elective politics is excluded from membership in the proposed redistricting commission). They recommend that the point be conveyed by describing the proposed commission as an "independent voter commission." We agree with the Attorney General, however, that, in this context, describing the commission as an "independent voter commission" is vague ("independent" from what?) and likely to confuse voters, given that, among other things, there is a political party called the "Independent Party of Oregon."

The Turrill petitioners argue, finally, that the caption should not refer to "Democrats" and "Republicans" in the phrase "equal numbers Democrats, Republicans, others," because IP 34 does not use those terms but rather refers to the "largest" and "second largest" party. We are persuaded, however, that naming the parties that are presently the largest and second largest is not inaccurate or confusing, and that the phrase "equal number Democrats, Republicans, others" thus reasonably identifies the intended major effect.

B.   *"Yes" Vote Result Statement*

We turn to the petitioners' challenges to the results statements, starting with the "yes" statement. A ballot title must include a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved." ORS 250.035(2)(b). That statement, known as a "yes" vote result statement, should "notify petition signers and voters of the result or results of enactment [of the measure] that would have the greatest importance to the people of Oregon." *Novick v. Myers*, 337 Or 568, 574, 100 P3d 1064 (2004). The "yes" vote result statement

in the certified ballot title for IP 34 states: "'Yes' vote repeals constitutional provisions on state redistricting; creates congressional/state redistricting commission; equal number of Democrats, Republicans, others. Repeals, replaces 2021 map in 2023."

Petitioner Mason argues that the phrase "repeals constitutional provisions on redistricting" in the quoted statement is problematic because it does not describe the substance of the provision that would be repealed.[8] We do not agree. The entire "substance" of the current constitutional redistricting provisions is too complex to be described within the applicable word limit, given that the redistricting process it describes involves not just the legislature, but also the Secretary of State and this court. Although the Attorney General reasonably could have chosen to highlight the legislature's primary role in the redistricting process set out in the constitutional provisions that IP 34 would repeal, her decision to refer to the repeal of "provisions on redistricting" sufficiently conveys one of the results of the measure that would be most significant to Oregon's citizenry.

Petitioner Mason also takes issue with the phrase "creates congressional/state redistricting commission." Much like her challenge to the phrase "creates redistricting commission" in the certified ballot-title caption, she argues that the phrase in the "yes" statement is potentially misleading because it does not convey that the new commission would be charged with drawing new congressional and legislative districts rather than merely serving an advisory role. In rejecting that argument as to the ballot-title caption, we reasoned that, in light of the words that preceded the phrase "creates redistricting commission," it could be inferred that the newly created redistricting commission would assume the legislature's existing role in redistricting. We recognize that the phrase "creates congressional/state redistricting

_____

[8] Petitioner Mason also argues that the phrase "repeals constitutional provisions on redistricting" is insufficiently specific because it does not convey that IP 34 would repeal *two* constitution provisions, *i.e.*, sections 6 and 7 of Article IV. We agree with the Attorney General, however, that the precise number of constitutional provisions that the measure would repeal is not something that would have great importance to the people of Oregon and need not be included in the statement.

commission" in the "yes" vote result statement is not similarly preceded by a reference to redistricting by the legislature. Nonetheless, given its parallel construction and its proximity to similar phrasing in the caption, readers of the "yes" statement are likewise inclined to infer that the commission would succeed the legislature in its redistricting role.

Finally, petitioner Mason argues that the sentence "Repeals, replaces 2021 map in 2023" is potentially misleading, in part because it could be read to mean that IP 34 itself contains a replacement plan (or "map") that will take effect in 2023, rather than—as is the case—a process for adopting redistricting plans in 2023. The Attorney General responds that petitioner Mason cannot complain about that wording because she "suggested" it herself in her comments on the draft ballot title. Specifically, petitioner Mason stated there that the "yes" vote result statement "must inform readers that if IP 34 is approved, a result would be to repeal and replace the recently adopted 2021 legislative redistricting and congressional reapportionment plans." Although we do not necessarily understand petitioner Mason's comment on the draft to have suggested the wording that she now challenges (so as to preclude our consideration of her present point), we do not find the point itself compelling. What the voters are likely to find most important about this particular result of a "yes" vote is that the legislature's recently enacted redistricting plans—which were intended to apply for the current decennium—will almost immediately be repealed and replaced. Considering the strict word limit that applies to this "yes" vote result statement, any potential uncertainty as to the source of the new plans that might result from the statement's failure to specify that source does not render the "yes" vote result statement deficient.

With regard to the same sentence in the "yes" vote statement, petitioner Mason objects to the use of "map" (singular) rather than "maps" (plural), because the legislature enacted both legislative and congressional maps in 2021. Although the Attorney General insists that "map" is a fair way to describe what IP 34 would repeal and replace, because congressional and state legislative districts can be depicted on a single map, the fact remains that the

legislature enacted separate congressional and state legislative redistricting maps in two separate statutes. When the Attorney General makes the modifications to the ballot title that are required by this opinion, she may wish to consider using the plural form—"maps"—in that sentence.

C.  *"No" Vote Result Statement*

A "no" vote result statement must be a "simple and understandable statement of not more than 25 words that describes the result if the state measure is rejected." ORS 250.035(2)(c). The "no" vote result statement in the Attorney General's certified ballot title states: "'No' vote retains current redistricting process; legislature draws boundaries of congressional and state legislative districts every ten years. 2021 redistricting remains in force until 2031."

Only the Turrill petitioners challenge the "no" statement. They argue that the statement fails to adequately describe the result of a "no" vote because it does not convey that, under current law, the legislature draws the legislative districts from which its own membership is elected. We conclude otherwise. There is no requirement that the "no" vote result statement for a measure reflect any individual's particular concerns. The statement that a "no" vote "retains current redistricting process" in which the "legislature draws boundaries of congressional and state legislative districts" adequately and fairly conveys the necessary information about the legislature's present role in redistricting.[9]

D.  *Summary*

We turn finally to the petitioners' challenges to the summary section of the ballot title certified by the Attorney General for IP 34. A summary consists of a "concise and impartial statement of not more than 125 words summarizing the state measure and its major effects." ORS 250.035(2)(d).

---

[9] The Turrill petitioners also argue that the statement is inadequate because it "understate[s IP 34's] major effect of eliminating personal and professional conflicts of interest." The Turrill petitioners presumably offer "eliminating personal and professional conflicts" as a "major effect" of *adopting* IP 34. But effects of that sort do not belong in the "no" vote result statement. Rather, the "no" vote result statement is supposed to "describe[] the result if the state measure is *rejected*." ORS 250.035(2)(c) (emphasis added).

Petitioner Mason's primary objection to the summary section of the certified ballot title is that it obscures one of the most significant effects of IP 34, by reducing it to a seven-word "sentence"—in truth, a mere coupling of telegraphic phrases—that is relegated to the end of the summary. She argues that the fact that IP 34 would nullify and replace the redistricting plans for the current decennium that were enacted by the legislature in 2021 requires a more expansive explanation and a more prominent place in the summary.

Ordinarily, the question of whether a ballot-title summary substantially complies with the applicable standard does not depend on where in the summary a particular major effect is placed or how many words are devoted to each effect. But, in this case, we agree with petitioner Mason that the Attorney General's summary unduly obscures, rather than explains, the effect that is at issue. The seven-word statement that the Attorney General has used to describe the effect—"Repeals 2021 maps; requires redistricting in 2023"—is cryptic in a way that might be necessary in a caption or result statement, where far fewer words are permitted, but is unacceptable in a summary, where the 125-word limit provides a greater opportunity to explain the measure's most important effects. Moreover, the placement of the statement at the very end of the summary, where less important aspects of a measure are often listed in similarly compressed form separated by semicolons, could be viewed as signaling that it, too, addresses a comparatively unimportant effect. As we have indicated, the fact that IP 34 would effectively repeal and replace the state legislative and congressional redistricting plans for the current decennium, which the democratically elected legislature recently enacted and shepherded through court challenges, is a highly significant effect of the measure. That effect and its significance should not be obscured—as it presently is—in the summary.

The Turrill petitioners also have objections to the summary. Their objections focus on a common theme—that the summary does not emphasize IP 34's purpose and major effect—to take redistricting out of the hands of legislators

who have professional and financial interests in the configuration of legislative districts and place it in the hands of a commission whose membership is limited to persons who have no such interests. They argue that, to highlight that effect, the commission should be identified as "independent." But, as we already have stated, the phrase "independent voter commission" is vague and likely to confuse voters. Rather than describing the commission in those terms, the summary should accurately and objectively describe the specific limitations on commission membership that IP 34 imposes.

The Attorney General believes that the limitations on commission membership that IP 34 imposes are accurately and objectively described in the following statement in the certified ballot title's summary: "Commission membership restricted based on length of residence/party affiliation, recent political work, political contributions, or family members who engaged in certain political activity." The Turrill petitioners argue, however, that that sentence is unhelpful because it could be erroneously interpreted as requiring, rather than prohibiting, the conflicts of interest that are listed. Although we think it unlikely, given the overall context, that many readers would misread the sentence in that manner, we cannot deny that it confusingly mixes characteristics that are required ("length of residence/party affiliation") with characteristics that are prohibited ("recent political work, political contributions, or family members who engaged in certain political activity"). When the Attorney General makes the modifications to the ballot title that are required by this opinion, she may wish to consider modifying the sentence to avoid any possibility of such confusion.

### III.   CONCLUSION

Having considered the points raised in each of the petitions that are before us, we conclude that two parts of the Attorney General's certified ballot title for IP 34 must be modified because they do not substantially comply with the applicable subsections of ORS 250.035(2). The caption must be modified to more clearly convey that IP 34 would repeal and replace the legislature's plan for the current decennium.

And the ballot-title summary must be modified to more fully and prominently explain the fact that IP 34 would repeal and replace the legislature's recently enacted redistricting plans for the current decennium.

The ballot title is referred to the Attorney General for modification.