On petitions to review ballot title filed March 18, considered and under advisement on May 10; ballot title referred to Attorney General for modification May 27, 2022

Michael SALSGIVER,
*Petitioner,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S069380 (Control))

Sarah IANNARONE,
Sarah Wright, Rob Zako,
Bob Cortright, and Ariel Mendez,
*Petitioners,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S069381)

510 P3d 205

The Attorney General certified a ballot title for Initiative Petition 41 (2022) (IP 41), an initiated measure that, if placed on the ballot and enacted by the people, would add a new section 16 to Article IX of the Oregon Constitution, which would specify that a "public body may not assess a toll" on any part of an Oregon "highway" unless approved by the voters of nearby counties. The new section 16 would provide an exception—tolls that were "in operation before January 1, 2018," would be permitted to continue operating without voter approval. Two sets of petitioners challenged the ballot title certified by the Attorney General for IP 34, arguing that the caption, yes and no result statements, and summary failed to substantially comply with the requirements set out in ORS 250.035(2) for ballot titles of state measures. *Held*: The caption and summary of the certified ballot title do not substantially comply with the requirements set out in ORS 250.035(2)(a) and (d) and must be modified.

The ballot title is referred to the Attorney General for modification.

En Banc

Maureen A. McGee, Tonkon Torp LLP, Portland, filed the petition and reply for petitioner Michael Salsgiver.

Margaret S. Olney, Bennett Hartman LLP, Portland, filed the petition and reply for petitioners Bob Cortright, Sarah Iannarone, Ariel Mendez, Sarah Wright, and Rob Zako.

Shannon T. Reel, Assistant Attorney General, filed the answering memorandum for respondent. Also on the answering memorandum were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

FLYNN, J.

The ballot title is referred to the Attorney General for modification.

**FLYNN, J.**

The case before us presents challenges to the ballot title that the Attorney General has certified for Initiative Petition 41 (2022) (IP 41). Two groups of petitioners have challenged the ballot title in this court. We conclude that petitioners have identified two ways in which the ballot title fails to substantially comply with the statutory requirements. Accordingly, we refer the ballot title to the Attorney General for modification.

## I. BACKGROUND

In a nutshell, IP 41 would add a new section 16 to Article IX of the Oregon Constitution, which would specify that a "public body may not assess a toll" on any part of an Oregon "highway" unless approved by the voters of nearby counties. Tolls that were "in operation before January 1, 2018," would be permitted to continue operating without voter approval. But otherwise, assessment of any "toll" for use of a "highway" would be prohibited unless (1) the toll was proposed by a public body; (2) the proposed toll was "referred for approval or rejection to the electors of each county in [Oregon] that has a county border within a 15-mile radius of any section of highway proposed to be tolled"; and (3) the proposed toll was "approved by a majority of the total votes cast in the referral." For purposes of the new constitutional provision, "highway" means any thoroughfare or place that is "used or intended for use of the general public for vehicles or vehicular traffic as a matter of right," and "toll" means "any fee or charge for the use of a highway."

The Attorney General certified the following ballot title for IP 41:

**"Amends Constitution: Prohibits 'highway' (defined) fees/tolls after certain date, unless voters in nearby counties approve**

**"Result of 'Yes' Vote:** 'Yes' vote amends constitution. After 2017, new 'highway' (defined) fees/tolls require voter approval in counties within 15 miles, including planned tolls on I-5, I-205.

"**Result of 'No' Vote:** 'No' vote retains current law allowing public bodies to collect fees/tolls without voter approval, including on certain sections of I-205/I-5.

"**Summary:** Amends Constitution. Currently, public bodies may collect fees and tolls without voter approval; current law requires tolls be collected on certain sections of I-205 and I-5 in Portland metro area. Measure prohibits public bodies from assessing 'any fee or charge for the use of a highway,' unless referred for approval or rejection to the electors in each county with a border within a 15-mile radius of any section of 'highway' proposed to be tolled and approved by majority of votes cast. Definition of 'highway' includes 'every public way, road, street, thoroughfare and place, including bridges, viaducts and other structures.' 'Vehicles' include devices propelled/powered by any means, including bicycles. Measure applies to tolls collected after December 31, 2017, including forthcoming I-205 and I-5 tolls."

## II.  ANALYSIS

Two sets of electors, who timely submitted comments on the Attorney General's draft ballot title, have filed petitions for review of the ballot title that the Attorney General ultimately certified. *See* ORS 250.085(2) (any elector dissatisfied with ballot title certified by Attorney General, who timely submitted comments on draft ballot title, may petition Supreme Court for review of certified ballot title). Petitioner Michael Salsgiver challenges all three parts of the certified ballot title—the caption, the results statements, and the summary. Petitioners Sarah Iannarone, Sarah Wright, Rob Zako, Bob Cortright and Ariel Mendez (Iannarone petitioners) also challenge all three parts of the certified ballot title. We conclude that two of petitioners' challenges identify a failure to substantially comply with the requirements for ballot titles set out in ORS 250.035 and, thus, require us to refer the certified ballot title to the Attorney General for modification. *See* ORS 250.085(8) (if court determines that certified ballot title does not substantially comply with requirements of ORS 250.035, court shall refer ballot title to Attorney General for modification). We reject petitioners' remaining challenges after full consideration but without written discussion, with one exception.

A.   *Caption*

The first challenge that correctly identifies a failure to substantially comply with the statutory requirements for ballot titles is a challenge by the Iannarone petitioners to the ballot title's caption. The ballot title of a state measure must include a caption "of not more than 15 words that reasonably identifies the subject matter" of the measure. ORS 250.035(2)(a).[1] A measure's "subject matter" is its "actual major effect" or, if there are several major effects, all such effects. *Mason v. Rosenblum*, 369 Or 656, 662, 508 P3d 504 (2022). To identify a measure's major effects, we look to the changes that the measure would produce "in the context of existing law." *Rasmussen v. Kroger*, 350 Or 281, 285, 253 P3d 1031 (2011). The Attorney General certified the following caption: "Amends Constitution: Prohibits 'highway' (defined) fees/tolls after certain date, unless voters in nearby counties approve."

The Iannarone petitioners contend that the caption that the Attorney General certified fails to reasonably identify a major effect of IP 41—that, if adopted, it will apply not just to newly imposed tolls and fees but to any toll or fee that was not "in operation before January 1, 2018." They note that a phrase in the caption—"after certain date"—indicates that there is a temporal limitation on the measure's application, but they argue that the phrase does not convey, as it must, that the "certain date" reaches back in time. They argue, in fact, that that phrase would likely be understood by voters as referring to a date in the future, contrary to the actual requirement of the measure.

In response, the Attorney General suggests that the current phrase adequately informs voters about the measure's temporal limitation. She argues that it is uncertain whether the measure's temporal scope will have an effect: no new highway tolls have been "collected" in Oregon since 2017, and "it is unclear whether any new tolls will be imposed" before the measure is put to the voters. She contends that the caption avoids confusion about the measure's *specific*

---

[1] When, as here, the measure would amend the Oregon Constitution, the caption must begin with the phrase "Amends Constitution," which is not counted against the 15-word limit. ORS 250.035(2)(a).

temporal effect by simply conveying what is important—that there is a temporal limitation on the tolls to which the measure would apply.

We disagree with the Attorney General regarding the uncertainty surrounding IP 41's effect. By its clear terms, the measure would operate to invalidate any toll that was not in operation by the end of 2017, even if the toll already has been approved by a public body—unless and until such a toll was placed before the voters in the relevant counties and they gave their approval. And, despite the fact that there may be no new toll that is "collected" before IP 41 takes effect, the parties do not appear to dispute that the temporal scope of the measure would reach a particular planned toll that was *adopted* by the legislature in 2021. *See* Or Laws 2021, ch 630, § 146 (amending ORS 383.150 to provide that the Oregon Transportation Commission "shall assess tolls" on designated stretches of Interstate 205 and Interstate 5 in the Portland region).[2] Under the circumstances, the fact that the "certain date" after which new tolls would require voter approval is a date more than four years in the past is an actual major effect of IP 41. The phrase that the Attorney General included in the caption is insufficient to identify that actual major effect. By contrast, elsewhere in the certified ballot title, the Attorney General has accurately described the temporal scope of IP 41 as applying to all new tolls and fees "[a]fter 2017," or "after December 31, 2017." Without similar specificity in the caption, the ballot title fails to substantially comply with the requirements of ORS 250.035(2)(a). The caption therefore must be modified.

B.  *Summary*

The other challenge that correctly identifies a failure to substantially comply with the applicable statutory requirements for ballot titles is a challenge by Petitioner Salsgiver to the certified ballot title's summary. The summary must be a "concise and impartial statement of not

---

[2] In 2017, the legislature enacted a statute, ultimately codified at ORS 383.150, that directed the Oregon Transportation Commission to "implement value pricing" on the same stretches of Interstate 5 and Interstate 205. Or Laws 2017, ch 750, § 120. That earlier statute *may* have resulted in tolls, but the 2021 amendment specifically required the commission to "assess tolls" on those stretches of the two interstates.

more than 125 words summarizing the state measure and its major effects." ORS 250.035(2)(d). Petitioner Salsgiver objects to the use of the word "collected" in the summary's final sentence—"Measure applies to tolls collected after December 31, 2017, including forthcoming I-205 and I-5 tolls"—on the ground that it causes the sentence to be inaccurate. The text of IP 41 does not use the term "collected," and petitioner Salsgiver argues that using the term "collected" causes the summary to suggest that IP 41 would require all existing tollways to stop collecting tolls until they obtain the approval of voters in nearby counties. He notes that IP 41 would not have that effect; it expressly excepts tolls that were "in operation before January 1, 2018," from its prohibition on "assess[ing]" tolls without voter approval, regardless of whether the toll is "collected after December 31, 2017." And at least two tolls in Oregon—the tolls collected on the Bridge of the Gods and the Hood River Bridge—would satisfy the exception specified in IP 41. Thus, petitioner Salsgiver argues, the use of the term "collected" in the sentence causes the summary to inaccurately describe a major effect of IP 41.

The Attorney General responds that voters will not be misled because, when read in the context of the last clause of the sentence ("including forthcoming I-205 and I-5 tolls"), the challenged wording does not suggest that the measure would apply to currently operating tollways. We are not persuaded. We conclude that the final sentence of the summary is inaccurate in the way that petitioner Salsgiver suggests and that, as a result, the ballot title summary fails to substantially comply with the requirements of ORS 250.035(2)(d). The sentence must be modified to correct the inaccuracy.

C.    *"Yes" and "No" Results Statements*

We briefly highlight a challenge to the results statements by petitioner Salsgiver that deserves additional consideration by the Attorney General on remand. A ballot title must include a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved," ORS 250.035(2)(b), and a similar statement "that describes the result if the state measure is rejected," ORS 250.035(2)(c). When a "thing or action" is

described in both the "yes" and "no" vote result statements, it must "be described using the same terms in both statements, to the extent practical," and "[a]ny different terms must be terms that an average elector would understand to refer to the same thing or action." ORS 250.035(2)(c).

Petitioner Salsgiver argues that the Attorney General's certified ballot title fails to adhere to the latter requirement for the results statements—that the "yes" and "no" vote results statements use the same term, or different terms that the average elector would understand as equivalent, to describe any action or thing that is mentioned in both statements. Petitioner Salsgiver observes that both statements appear to refer to the toll that ORS 383.150(3) directs the Oregon Transportation Commission to assess on sections of I-5 and I-205. Yet the two statements use different terms to describe those tolls: The "yes" vote result statement refers to requiring voter approval for tolls "including planned tolls on I-5, I-205," while the "no" vote result statement refers to allowing tolls without voter approval, "including on certain sections of I-205/I-5." Petitioner Salsgiver contends that the use of different terms might suggest to the average elector that the statements are referring to different tolls. The Attorney General responds that the use of a different phrase in the "no" vote result section is unlikely to confuse voters because the phrase "including on certain sections of I-205/I-5," read in the context of the entire "no" vote result statement, properly informs voters that, if the measure is rejected, there are no obstacles to collecting tolls on I-5 and I-205, whether or not they are planned or presently existing.

We accept the Attorney General's point—that the literal import of the different words used in the "no" vote results statement would be unlikely to result in a misunderstanding as to the result if voters disapprove IP 41. But the fact remains that the two statements *do* use different terms to refer to the same tolls (the tolls that are mandated by ORS 383.150(3)), and the Attorney General offers no reason why using the same term would not be a practical way to improve clarity. Although the discrepancy does not, in itself, amount to a failure to substantially comply with the

statutory requirements that would require modification of the ballot title, when the Attorney General makes the modifications to the caption and summary that are required by this decision, she may wish to consider addressing petitioner Salsgiver's challenge to the results sections of the ballot title as well.

## III.   CONCLUSION

We conclude that two parts of the Attorney General's certified ballot title for IP 41 must be modified because they do not substantially comply with the requirements of ORS 250.035(2). The caption must be modified to clearly identify one of the measure's actual major effects—that its prohibition on tolls that have not been voter approved would not be prospective only but would apply to any toll imposed after 2017. And the summary must be modified to correct the misimpression created by the word "collected" in the final sentence—that IP 41 would require existing tollways, such as those on the Bridge of the Gods and the Hood River Bridge, to satisfy the measure's voter-approval requirement.

The ballot title is referred to the Attorney General for modification.