On petitions to review ballot title filed October 25 and 26, 2022, considered and under advisement January 10; ballot title referred to Attorney General for modification March 2, 2023

Angela WILHELMS,
*Petitioner,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S069838) (Control)

Lamar WISE,
Christy Mason, and
Michael Selvaggio,
*Petitioners,*

*v.*

Ellen ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S069842)

David DELK,
Rebecca Gladstone,
and Jason Kafoury,
*Petitioners,*

*v.*

Ellen ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S069843)

525 P3d 852

The Attorney General certified a ballot title for Initiative Petition 9 (2024) (IP 9). Three sets of petitioners challenge the certified ballot title on the grounds that its caption, "yes" and "no" vote result statements, and summary did not substantially comply with the requirements of ORS 250.035. *Held*: The Attorney General's certified ballot title for IP 9 does not substantially comply with the requirements of ORS 250.035.

The ballot title is referred to the Attorney General for modification.

Jill O. Gibson, Lynch Murphy McLane, LLP, Lake Oswego, filed the petition and reply for petitioner Angela Wilhelms.

Margaret S. Olney, Bennett Hartman, LLP, Portland, filed the petition and reply for petitioners Lamar Wise, Christy Mason, and Michael Selvaggio.

Daniel W. Meek, Portland, filed the petition and reply for petitioners David Delk, Rebecca Gladstone, and Jason Kafoury and filed briefs for those petitioners as *amici curiae* in S069838 and S069842.

Patricia G. Rincon, Assistant Attorney General, Salem, filed the answering memorandum for respondent. Also on the answering memorandum were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, Bushong and James, Justices.*

DeHOOG, J.

The ballot title is referred to the Attorney General for modification.

_____

   * Nelson, J., resigned February 25, 2023, and did not participate in the decision of this case.

**DeHOOG, J.**

In these consolidated ballot-title review cases, three sets of electors—petitioner Wilhelms, petitioners Wise, Mason, and Selvaggio (Wise petitioners), and petitioners Delk, Gladstone, and Kafoury (Delk petitioners)—challenge the Attorney General's certified ballot title for Initiative Petition 9 (2024) (IP 9). We review the ballot title for substantial compliance with ORS 250.035. *See* ORS 250.085(5) (stating standard of review). For the reasons that follow, we conclude that several of petitioners' arguments that the ballot title does not substantially comply with ORS 250.035(2) are well taken; we therefore refer the ballot title to the Attorney General for modification.

If adopted, IP 9 would effect various changes to Oregon's campaign-finance and elections-related laws. Currently, federal and state law requires some reporting of campaign contributions and certain disclosures in political advertising. *See generally* ORS chapter 260; 52 USC §§ 30101 - 30126; 11 CFR § 110. However, state law imposes no limits on campaign contributions.[1] Among other things, IP 9 would limit the amounts of contributions that individuals could make to candidate committees and that candidate committees could accept from individuals and other candidate committees, it would add disclosure requirements for political advertisements (including requiring that advertisements disclose the four largest sources of funding), and it would establish a new enforcement system for elections-related violations (including violations of the new campaign-finance requirements).

The Attorney General certified the following ballot title for IP 9:

> "**Limits campaign contributions to candidates, others; additional reporting/disclosure requirements for political advertisements; other provisions**
>
> "**Result of 'Yes' Vote:** 'Yes' vote limits contributions to candidate and other political committees/membership organizations; requires additional reporting and disclosures for

---

[1] Multnomah County and the City of Portland each have local laws imposing campaign contribution limits to candidates for local public offices.

candidate/measure political advertisements; new enforcement system.

"**Result of 'No' Vote:** 'No' vote maintains existing reporting and disclosure requirements; contributions not limited under state law; no additional reporting/disclosures for political advertisements; keeps existing enforcement system.

"**Summary:**  Current law requires certain reporting/disclosures; state law does not limit campaign contributions. Measure limits dollar amount of contributions to candidate and other political committees/membership organizations depending on the source and recipient; some contributions prohibited. Limits amount and use of unexpended campaign funds carrying forward after election. Sets filing deadlines for incumbents seven days earlier than nonincumbents. Amends ORS 162.005 to remove exception for reported campaign contributions in bribery statutes. Requires political advertisements to disclose top four donors of 'original funds' (defined) and certain candidate contributions; additional reporting requirements. Penalties for contribution violations; allows challenges through contested case proceedings; untimely violation decisions appealable in circuit court; private right of action for violations related to employee/contractor contributions. Allocates $1 million/biennium; actual costs unclear."

## I.   ANALYSIS

As noted, three sets of electors, all of whom timely submitted comments on the Attorney General's draft ballot title, have filed petitions for review of the ballot title that the Attorney General ultimately certified. *See* ORS 250.085(2) (any elector dissatisfied with ballot title certified by Attorney General, who timely submitted comments on draft ballot title, may petition Supreme Court for review of certified ballot title). All petitioners challenge all parts of the Attorney General's certified ballot title—the caption, the "yes" result statement, the "no" result statement, and the summary. We conclude that each petitioner or set of petitioners has identified at least one way in which the certified ballot title fails to substantially comply with the ballot-title specifications set out in ORS 250.035, and that, as a result, the certified ballot title's caption, "yes" result statement, and summary each require modification. We therefore refer the ballot title to the

Attorney General to make the necessary changes. *See* ORS 250.085(8) (if court determines that certified ballot title does not substantially comply with requirements of ORS 250.035, court shall refer ballot title to Attorney General for modification). We reject petitioners' remaining challenges without written discussion.

A.  *Caption*

The ballot-title caption for a state measure must contain no more than 15 words and must "reasonably identif[y] the subject matter of the state measure." ORS 250.035(2)(a). The subject matter is the "actual major effect" of a measure. *Mason/Turrill v. Rosenblum*, 369 Or 656, 662, 508 P3d 504 (2022). "[T]he 'actual major effect' of a measure" means "the changes that the proposed measure would enact in the context of existing law." *Rasmussen v. Kroger (S059261)*, 350 Or 281, 285, 253 P3d 1031 (2011). If the measure has more than one major effect, then the caption must identify "all such effects (to the limit of the available words)." *Id*. For convenience, we again set out the certified ballot-title caption:

> "Limits campaign contributions to candidates, others; additional reporting/disclosure requirements for political advertisements; other provisions."

The Delk petitioners challenge the caption on the ground that it does not adequately convey the subject matter of IP 9 and therefore does not substantially comply with the requirements of ORS 250.035(2)(a). As we will explain, we agree with that challenge.

The Delk petitioners identify two major effects of IP 9 that they contend must be set forth in the caption: IP 9 would (1) require a new and different type of campaign-finance reporting to government authorities, and (2) considerably increase transparency in political advertisements. As to the first asserted effect, they note that current law only requires campaigns that expend campaign funds to identify those who directly make election-related contributions to them; that is, they need only report the name of the person or other entity in possession of the funds at the time that a contribution is made. IP 9, on the other hand, would require

candidates and campaigns to trace contributions of more than $5,000 to their original sources. IP 9, § 6(3)(a), (b). In other words, IP 9 would require them to report the identities of each person or legal entity who originally contributed more than $5,000 in election-related funds now being spent, as well as the identity of all those who acted as intermediaries to the ultimate contribution. As to the second asserted effect, the Delk petitioners explain that IP 9 would require that each political advertisement by those subject to the proposed law include an "ad is paid for by" tagline that prominently discloses the candidate's or campaign's four largest original contributors during the current calendar year. IP 9, § 6(8). The Delk petitioners note that, with two exceptions applicable only to local elections in Portland, Oregon law has not required that any contributors to political spending be named other than direct contributors, and it does not require advertisements placed by any candidate campaign to name any of the campaign's funding sources, regardless of contribution size.

The Delk petitioners contend that the requirements that original funding sources be reported to the state and identified in political advertisements are central features of IP 9 and, therefore, must be included in the caption. They acknowledge that the certified ballot title includes the phrase "additional reporting/disclosure requirements for political advertisements" in its caption, but they contend that that phrase is vague and, therefore, insufficient to inform voters of the significant changes to existing law that IP 9 represents. Notably, the Attorney General does not dispute that those are major effects of IP 9. Nor does she contend that they could not reasonably be identified in the caption within the applicable 15-word limit or that their placement there would displace other, equally significant effects. Instead, the Attorney General's entire argument in response to the Delk petitioners' challenge is that, "given the measure's various disclosure and disclaimer requirements, a general description of those major effects is appropriate."

We agree that the required reporting of original funding sources and the requirement that political advertisements name their largest sources of funding are major

effects of IP 9 that the ballot title's caption must identify. As we have previously noted, "[i]t is this court's practice to require that a ballot title caption for a measure like the one before us inform prospective voters of the substantive change in existing law that the measure will make." *Whitsett v. Kroger*, 348 Or 243, 248, 230 P3d 545 (2010) (internal quotation marks omitted). The requirements that campaigns trace, report, and disclose in political advertisements the original sources of funding would represent significant departures from the existing law, under which the underlying sources of political funding go largely untracked and political advertisements need only identify the campaigns that paid for them and not the sources of those campaigns' funds.[2] The caption must inform prospective voters of those substantive changes in the law, and the certified ballot title's vague reference to "additional reporting/disclosure requirements" does not reasonably do so. As a result, we agree with the Delk petitioners that, to the extent possible within the applicable 15-word limit, the caption must include a description of those major effects.

B.  *"Yes" Result Statement*

Under ORS 250.035(2)(b), the "yes" result statement must be a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved." The certified ballot title's "yes" result statement for IP 9 is as follows:

---

[2] Notably, section 1 of IP 9 sets out "Legislative Findings" purporting to explain the measure's purpose and effect. Those findings include prominent references to IP 9's new reporting and disclosure requirements regarding original sources of major contributions and expenditures, further suggesting that those provisions are central features of the measure. IP 9, section 1, states, in part:

"(12) The people of Oregon have the right to know the original sources of all major contributions and expenditures used to pay, in whole or in part, for communications that influence elections. This right requires prompt, accessible, comprehensible, and public disclosure of the identity of top donors who give more than $5,000 each to fund communications that influence elections and the original sources of those monies.

"(13) The disclosure and tagline 'ad is paid for by' requirements of this Act will provide more information about candidates and the persons and groups supporting or opposing them, as well as persons and groups supporting or opposing ballot measures, and will enable voters to better evaluate the credibility of advertising about candidates and ballot measures.

"(14) The reporting and disclosure requirements of this Act will also assist law enforcement officials in obtaining the information necessary to enforce the prohibitions, limitations, and requirements of this Act and other campaign finance laws in Oregon."

"**Result of 'Yes' Vote:**  'Yes' vote limits contributions to candidate and other political committees/membership organizations; requires additional reporting and disclosures for candidate/measure political advertisements; new enforcement system."

The Delk petitioners contend that, for much the same reason that the caption is defective, the "yes" result statement does not substantially comply with ORS 250.035(2)(b). In their view, it does not clearly describe two major changes to the law that IP 9 would effect: It would require campaigns to report to state officials the original sources of major contributions and expenditures, and it would require that political advertisements for or against candidates or measures identify their four largest underlying original funding sources.

We agree with the Delk petitioners that the certified ballot title's "yes" statement does not adequately describe the "result" of approving IP 9 and, therefore, does not substantially comply with the requirements of ORS 250.035(2)(b). "The purpose of the 'yes' result statement is to 'notify petition signers and voters of the result or results of enactment that would have the greatest importance to the people of Oregon.'" *Cross v. Rosenblum*, 359 Or 136, 144, 373 P3d 125 (2016) (quoting *Novick/Crew v. Myers,* 337 Or 568, 574, 100 P3d 1064 (2004)). As discussed above with regard to the caption, the requirements that campaigns report their original funding sources to the state and that political advertisements identify their largest original sources of funding represent significant departures from existing law and, in our view, would be among the features of IP 9 that voters would consider most important. Thus, the "yes" result statement must be modified to indicate, in some way, those changes that would result if IP 9 were to be enacted.

The Wise petitioners also challenge the "yes" result statement on various grounds, one of which is well taken. Specifically, the Wise petitioners contend that the statement that a "yes" vote "limits contributions to candidate and other political committees/membership organizations" inaccurately states that IP 9 limits contributions to membership organizations. They note that the limits that IP 9 would impose are on contributions to candidates and other

candidate-related political committees, and not contributions to membership organizations. *See* IP 9, § 3(2). That is, IP 9 would limit how certain membership organizations can support candidates and would provide limits on how much money a campaign committee can accept "during any election period *from* any membership organization." IP 9, § 3(3) (emphasis added). *See also* IP 9, §§ 3(4), 3(5) (setting out other rules governing contributions—both cash and in-kind—from membership organizations). And it would impose additional disclosure requirements as to those contributions. But, as the Wise petitioners point out, IP 9 would not limit donations or contributions *to* membership organizations. They contend therefore that the certified ballot title's "yes" result statement is misleading in that regard, and they argue that the "yes" result statement must be modified to eliminate that inaccuracy.

The Attorney General disputes the claim that the "yes" result statement is misleading in that way, contending that IP 9 would, in fact, impose limitations on contributions to membership organizations. In so arguing, the Attorney General does not dispute that IP 9 would not impose general limits on contributions to membership organizations. She explains, however, that IP 9, section 4, would permit "any business entity, labor organization, or nonprofit entity"—including membership organizations as defined in the measure—to establish or administer a "separate, segregated fund that operates as a political committee" if certain criteria are met. And, she points out, such separate and segregated funds would, in turn, be subject to the contribution limitations set out in section 3, which themselves apply to all individuals and entities, including those who contribute to membership organizations. Accordingly, the Attorney General reasons, if a membership organization were to establish a separate, segregated fund as authorized under IP 9, then its own members' contributions to that fund would be limited. It follows, she contends, that the reference to limits on contributions to membership organizations in the "yes" result statement would be correct in that circumstance.

We acknowledge that, in that technical regard—and in that specific circumstance—the "yes" result statement

could be viewed as accurate, as the Attorney General suggests. Nonetheless, with respect to IP 9 as a whole, we conclude that the statement "limits contributions to candidate and other political committees/membership organizations" is misleading. IP 9 would generally limit contributions to candidates and political committees. By referencing membership organizations in the same phrase that identifies those limits, the "yes" statement suggests that the measure likewise would generally limit contributions to membership organizations, which is not the case. Thus, we agree with the Wise petitioners that the certified ballot title's "yes" result statement does not substantially comply with the requirements of ORS 250.035(2)(b) and therefore must be modified.

C. *Summary*

ORS 250.035(2)(d) requires a ballot-title summary to be a "concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." Both petitioner Wilhelms and the Wise petitioners have identified ways in which, in their view, the certified ballot-title summary fails to substantially comply with those requirements. For the reasons that follow, we agree with both.

Beginning with the Wise petitioners, they argue that the summary suffers from the same defect as the "yes" result statement in referring to contributions to membership organizations. In particular, they contend that the second sentence of the summary is inaccurate. The second sentence of the summary states:

> "Measure limits dollar amount of contributions to candidate and other political committees/membership organizations depending on the source and recipient; some contributions prohibited."

We agree with the Wise petitioners on that point. Like the virtually identical wording in the "yes" result statement, the foregoing sentence misleadingly suggests that IP 9 would impose limits on all contributions to membership organizations. Indeed, it goes farther than the "yes" result statement, suggesting that some contributions to membership organizations would be prohibited altogether, an effect that

the measure would not have under any circumstance. Thus, for the same reasons that we conclude that the "yes" result statement fails to substantially comply with the requirements of ORS 250.035(2)(b), we likewise conclude that the summary does not substantially comply with the requirements of ORS 250.035(2)(d) and must be modified.

Petitioner Wilhelms also identifies one way in which the summary does not meet the applicable requirements. Petitioner Wilhelms challenges the final sentence in the summary: "Allocates $1 million/biennium; actual costs unclear." She argues that IP 9 would require spending to implement the measure essentially without limit, but that the phrase "allocates $1 million/biennium" misleadingly suggests that spending to implement the measure would be capped at $1 million, regardless of actual costs. She further argues that the phrase, "actual costs unclear" does nothing to clarify the actual funding scheme that the measure contemplates. The Attorney General responds that the certified ballot-title summary accurately conveys how much the measure purports to allocate for its implementation, while correctly indicating that the actual costs remain unclear.

Funding for purposes of administering the measure is addressed in IP 9, section 14, which provides:

"(1)   The Campaign Finance Regulation Fund is established in the General Fund for the purposes of administering the provisions of this Act. The Legislative Assembly shall appropriate, allocate or otherwise make available to the fund an amount not less than $1 million per biennium. The fund is continuously appropriated to the Secretary of State for the purposes of this Act.

"(2)   To the extent that administering the provisions of this Act requires funding in excess of amounts currently provided to the Secretary of State, the additional funding shall be provided by:

    "(a)   Revenue from fines assessed for violations of this Act and other provisions of ORS Chapter 260;

    "(b)   Voluntary transfers of unexpended moneys that remain in the accounts of candidate committees after the end of the applicable election cycle; and

    "(c)   The General Fund, if necessary."

The text of section 14 indicates that, as petitioner Wilhelms notes, the reference to $1 million in IP 9 does not impose a cap on spending. Rather, it would create a funding floor: Subsection (1) provides that Legislative Assembly must appropriate "not less than $1 million per biennium." To the extent actual costs of implementing the measure exceed the amount appropriated by the legislature in a given year, subsection (2) prioritizes other sources of funding, but it ultimately provides that any necessary funding not available through other sources would come from the General Fund.

As a result, we agree that the statement "allocates $1 million/biennium; actual costs unclear" is misleading. A reasonable voter could understand that statement to suggest that the legislature must appropriate exactly $1 million, while recognizing that the actual cost of administering IP 9 may be less. The text of section 14, however, states that the legislature must appropriate "not less than $1 million." Moreover, section 14 clearly contemplates that biennial expenditures may well exceed that amount, and it sets no upper limit on spending to administer the measure. For those reasons, we agree with petitioner Wilhelms that the summary does not substantially comply with the requirements of ORS 250.035(2)(d) and must be modified.

## II.   CONCLUSION

We conclude that the caption, "yes" result statement, and summary of the Attorney General's certified ballot title for IP 9 must be modified, because they do not substantially comply with the requirements of ORS 250.035(2). The caption must be modified to include the major effects identified in this opinion: that IP 9 would require that campaigns report major original funding sources and that political advertisements identify their largest contributors. The "yes" result statement must be modified as follows: (1) it must reflect the major effects identified above, each of which also is a significant change to existing law; and (2) it must not misleadingly suggest to voters that IP 9 would limit all contributions to membership organizations. Finally, the summary must also be modified to correct two misleading suggestions: (1) that the measure limits all contributions

to membership organizations; and (2) that the measure would cap spending to implement its terms at $1 million per biennium.

The ballot title is referred to the Attorney General for modification.